JENNIE M. OPPENHEIM, Appellant, *v.* MARTHA KRIDEL, Respondent.

**Husband and wife — criminal conversation — action by wife against a paramour of her husband.**

A wife can maintain an action for criminal conversation against a woman for having criminal intercourse with her husband without her privity, connivance or consent.

*Oppenheim* v. *Kridel*, 204 App. Div. 305, modified.

(Argued May 2, 1923; decided May 29, 1923.)

APPEAL from a judgment, entered February 2, 1923, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*Isaac H. Levy* and *George Gordon Battle* for appellant. The wife has a right of action at common law for criminal conversation with her husband. The incapacity to bring action, which existed at common law, has been removed by statute. (*Bennett* v. *Bennett*, 116 N. Y. 584; *Posner* v. *Jackson*, 223 N. Y. 325; *Lamb* v. *Cheney*, 227 N. Y. 418; *Colwell* v. *Tinker*, 169 N. Y. 537; 193 U. S. 473; *Hasbrouck* v. *Vandervoort*, 9 N. Y. 153; *Houghton* v. *Rice*, 174 Mass. 366; *Nolin* v. *Pearson*, 191 Mass. 283; *Turner* v. *Heavrin*, 182 Ky. 65; *Rott* v. *Goehring*, 33 N. D. 413; *Parker* v. *Newman*, 75 So. Rep. 479.)

*Charles A. Brodek* for respondent. At common law a husband may maintain an action for criminal conversation, based upon the seduction of his wife. Such an action has grounds on which to rest that cannot be invoked in support of a similar action in favor of the wife for the seduction of her husband, and consequently at common law a wife had no cause of action for criminal conversation. (*Woodward* v. *Walton*, 2 B. & P. [N. R.] 476; *Rigault* v. *Gallisard*, 7 Mod. 78; *Doe* v. *Roe*, 82 Me.

503; *Macfadden* v. *Olivant,* 6 East, 387; *Haney* v. *Townsend,* 1 McCord, 206; *Bedan* v. *Turney,* 99 Cal. 649; *M'Clure* v. *Miller,* 11 N. C. 133; *Wales* v. *Miner,* 89 Ind. 118; *Bigaonette* v. *Pauley,* 134 Mass. 123; *Tinker* v. *Colwell,* 193 U. S. 472.) The courts of this state have, since the enactment of the Married Women's Acts, followed the common-law principle that a wife has no cause of action for criminal conversation merely. A woman does not become liable to a wife unless the element of enticement is established, and then she becomes liable for alienation of affection. (*Romaine* v. *Decker,* 11 App. Div. 20; *Buchanan* v. *Foster,* 23 App. Div. 542; *Kuhn* v. *Hennann,* 43 App. Div. 108; *Hodecker* v. *Stricklen,* 39 N. Y. Supp. 515; *Whitman* v. *Egbert,* 27 App. Div. 374; *Warner* v. *Miller,* 17 Abb. [N. C.] 221; *Churchill* v. *Lewis,* 17 Abb. [N. C.] 226; *Strock* v. *Russell,* 148 App. Div. 483; *Loper* v. *Askin,* 178 App. Div. 163.) The common-law rule that a wife has no cause of action for criminal conversation in this state is recognized and emphasized by the statute law of this state, to wit, section 831 of the Code of Civil Procedure, now section 349 of the Civil Practice Act. (*Strock* v. *Russell,* 148 App. Div. 483; *Biers* v. *Biers,* 156 App. Div. 409; *Ratcliffe* v. *Wales,* 1 Hill, 63; *Romaine* v. *Decker,* 11 App. Div. 20; *Buchanan* v. *Foster,* 23 App. Div. 542; *Whitman* v. *Egbert,* 27 App. Div. 374; *Kuhn* v. *Hemmann,* 43 'App. Div. 108; *Hodecker* v. *Strickler,* 39 N. Y. Supp. 515; *Loper* v. *Askin,* 178 App. Div. 163.) Appellant's contention that section 57 of the Domestic Relations Law read in connection with section 37-a of the General Construction Law (formerly Code Civ. Pro. § 3343, subd. 9), creates a cause of action in favor of a wife against a woman for criminal conversation, is unsound. (*Colwell* v. *Tinker,* 169 N. Y. 531; *Matter of Meng,* 227 N. Y. 264; *Brooks* v. *Schwerin,* 54 N. Y. 343; *Coleman* v. *Burr,* 93 N. Y. 17; *Pillow* v. *Buschnell,* 4 How. Pr. 9; *Fitzgerald* v. *Quann,* 109 N. Y. 441; *Rosin* v. *Ledgerwood Mfg. Co.,*

89 App. Div. 245; *Jones* v. *City of Albany*, 151 N. Y. 223; *Bertles* v. *Nunan*, 92 N. Y. 152.)

CRANE, J.  Can a wife maintain an action for criminal conversation as well as a husband?  This is the question presented by this appeal.

The plaintiff and her husband were married in 1884 and had one child, who was married in 1909.  They lived together in the same house or apartment until 1917.  It can be gathered from the evidence that in 1913 the parties had ceased to live together as husband and wife. It is about this time that the defendant, a widow with children, entered into the lives of these two parties. From 1913 until a final separation in 1917 the husband seems to have lost his love and affection for his wife. During this time he was seeing the defendant with more or less frequency.  Intimacy increased with the years, until in January, 1919, he and the defendant were found in his apartment in New York city under such circumstances as to leave no doubt that they had committed adultery.  The fact is conceded.

The plaintiff, Mrs. Jennie M. Oppenheim, thereupon brought this action against Mrs. Martha Kridel, the guilty party, alleging in her complaint:  " That the defendant, well knowing said Myron H. Oppenheim to be the plaintiff's husband, and maliciously and wilfully intending to injure the plaintiff and deprive her of the comfort, society, aid, assistance and support of her said husband, and to alienate and destroy his affection for her, heretofore, and on or about the 12th day of January, 1919, and on divers other days and times during the last four years last past, and before the commencement of this action, at the premises No. 207 West 56th Street, Borough of Manhattan, City of New York, and at divers other premises and places, wrongfully and wickedly and without the privity or connivance of plaintiff, debauched and carnally knew the said Myron H. Oppenheim, by

means whereof the affection of the said Myron H. Oppenheim for the said plaintiff was wholly alienated and destroyed, and by reason of the premises the plaintiff has wholly lost the affection, comfort, society, aid, assistance and support of her said husband."

On the trial the justice refused to consider the case as one for alienation of affections and submitted it to the jury solely as an action for criminal conversation. He charged: " You are not to concern yourselves with any question as to whether or not the defendant alienated the affections of plaintiff's husband. There is now no such question in this case." He further said: " It is only necessary for the plaintiff to prove her marriage and the criminal intercourse between her husband and the defendant, and that such criminal intercourse was without her consent." The jury, however, were permitted to consider the loss of the husband's affections and his society and the mental anguish and disgrace sustained by the plaintiff, if any, on the question of damages.

On appeal the judgment for the plaintiff entered upon the verdict of a jury in her favor, was reversed by a divided court and the complaint dismissed under a ruling that an action for criminal conversation could not be maintained in this state by a wife.

We have arrived at the conclusion after a full review of the authorities, that whatever may have been the rights of the wife in this particular under ancient law, there is no reason or law against her maintaining such an action to-day so long as the husband may do so.

At common law the wife had no cause of action against a woman for alienating the affections of her husband or for the act of adultery committed with him known by the technical name of an action for criminal conversation. The husband could bring such action against a man for enticing away the affections of his wife or for committing adultery with her. Some of the reasons assigned as the basis of the action by the husband

for criminal conversation sound somewhat strange in our ears to-day. The gist of the action was the possibility that by the infidelity of a wife the husband might be called upon to support illegitimate children, or the legitimacy of his own offspring be cast into doubt. The husband, so it was said, had a property in the body, and a right to the personal enjoyment of his wife, for the invasion of which right the law permitted him to sue as husband. The wrongful act was treated as an actual trespass upon the marital rights of the husband although the consequent injury to him was on account of the corruption of the body and mind of the wife. (*Tinker* v. *Colwell,* 193 U. S. 473–483.)

These old authorities and reasons have carried the respondent to the logical conclusion which he states in his brief as follows: " The husband's cause of action is based upon his proprietary right in the person of his wife. * * * The assertion that husband and wife are now equal in the eyes of the law has no bearing on the cause of action for criminal conversation, which was predicated upon the possessory right of the superior being in the body of the inferior."

The basis for some of these apparently harsh reasons mentioned in the early common law arose out of forms of action and difficulties in procedure. They were written into the law at a time when forms of action were rigid and limited and fictitious reasons' were sought to justify relief under existing but inappropriate forms. The adultery was treated as an assault upon the person of the husband. This search for a remedy was referred to as follows: " The assault *vi et armis* is a fiction of the law, assumed at first, in early times, to give jurisdiction of the cause of action as a trespass, to the courts, which then proceeded to permit the recovery of damages by the husband for his wounded feelings and honor, the defilement of the marriage-bed, and for the doubt thrown upon the legitimacy of children." (*Tinker* v. *Colwell, supra,* 481.)

Barring the fictions which apply only to procedure, whatever reasons there were for giving the husband at common law the right to maintain an action for adultery committed with his wife, exist to-day in behalf of the woman for a like illegal act committed with her husband. If he had feelings and honor which were hurt by such improper conduct, who will say to-day that she has not the same, perhaps even a keener sense, of the wrong done to her and to the home? If he considered it a defilement of the marriage-bed, why should not she view it in the same light? The statements that he had a property interest in her body and a right to the personal enjoyment of his wife are archaic unless used in a refined sense worthy of the times and which give to the wife the same interest in her husband. The fiction of assault whereby courts were given jurisdiction has long since vanished except for historical interest. The danger of doubt being thrown upon the legitimacy of the children, which seems to be the principal reason assigned in all the authorities for the protection of the husband and the maintenance of the action by him, may be offset by the interest which the wife has in the bodily and mental health of her children when they are legitimate. Science to-day teaches us the dire consequences which sometimes follow promiscuous intercourse by a man. It is common knowledge that the sins of the father are sometimes visited not only upon the children but upon the wife in the resultant diseases contracted through breaches of the marriage contract. The husband must not have discredit thrown upon the legitimacy of his children. The wife should have no doubt about the health and cleanliness of her husband or of her offspring. Legitimacy is important. Children of sound mind and body are equally as important.

It is said in this case that the affections of the husband and wife had already been alienated, and that the

defendant could cause the wife no harm by her illegal relations with the husband, as the husband had ceased to live with the wife and his love for her had already vanished. Such a proposition loses sight of the fact that the parties were still husband and wife, the marriage bonds had not been dissolved, and that there was always the possibility of reconciliation rendered perhaps too remote by the defendant's illicit relationship.

So far as I can see there is no sound and legitimate reason for denying a cause of action for criminal conversation to the wife while giving it to the husband. Surely she is as much interested as the husband in maintaining the home and wholesome, clean and affectionate relationships. Her feelings must be as sensitive as his toward the intruder, and it would be mere willful blindness on the part of the courts to ignore these facts.

Both the courts of this state and the statutes have recognized this change in the status, rights and privileges of a married woman. As stated before, the common law gave a married woman no action either for alienation of affections or for criminal conversation. Yet this court has recognized that under the statutes giving her the power to maintain actions in her own name she may now sue another woman for alienating the affections of her husband. (*Bennett* v. *Bennett*, 116 N. Y. 584.) It is true that this case was not decided upon the theory that the Married Women's Acts of 1860 and of 1862 permitting her to sue in her own name gave her a cause of action which she did not previously possess. The question put and answered by that case was the following: " Can it be sustained upon the theory that the right of action belongs to the wife according to the general principles of the common law and that she may now maintain it, being permitted to sue in her own name? " (p. 589.) In answering this question in the affirmative, this court proceeded upon a theory that the right always existed in the woman at common law but that she could not enforce

1923.]                     Opinion, per CRANE, J.            [236 N. Y. 156]

it by reason of the rules of practice which prohibited her from maintaining actions and which also gave to the husband her property. This was pure theory as it is difficult to understand how any substantial right could exist at common law for which there was no remedy afforded. The fact is the *Bennett* case established the rule that as the husband could sue for the alienation of his wife's affections, there was no reason why the wife should not also maintain such an action under our forms of procedure when the results were as injurious to her from the alienation of her husband's affections as they would be to the husband by the alienation of her affections. The question was again asked in the opinion in that case: " Has she such a legal right to the conjugal society of her husband as to enable her to recover against one who wrongfully deprives her of that right? " And the court again answered by these general reflections upon the facts as they existed and were known by everybody to exist: " The actual injury to the wife from the loss of consortium, which is the basis of the action, is the same as the actual injury to the husband from that cause. His right to the conjugal society of his wife is no greater than her right to the conjugal society of her husband. Marriage gives to each the same rights in that regard. Each is entitled to the comfort, companionship and affection of the other. The rights of the one and the obligations of the other spring from the marriage contract, are mutual in character and attach to the husband as husband and to the wife as wife. Any interference with these rights, whether of the husband or of the wife, is a violation not only of a natural right, but also of a legal right arising out of the marriage relation. It is a wrongful interference with that which the law both confers and protects. A remedy, not provided by statute but springing from the flexibility of the common law and its adaptability to the changing nature of human affairs, has long existed for the redress of the wrongs of

the husband. As the wrongs of the wife are the same in principle and are caused by acts of the same nature as those of the husband, the remedy should be the same. What reason is there for any distinction? Is there not the same concurrence of loss and injury in the one case as in the other? Why should he have a right of action for the loss of her society unless she also has a right of action for the loss of his society? Does not the principle that ' the law will never suffer an injury and a damage without a remedy ' apply with equal force to either case? Since her society has a value to him capable of admeasurement in damages, why is his society of no legal value to her? Does not she need the protection of the law in this respect at least as much as he does? Will the law give its aid to him and withhold it from her? " (p. 590.) What is here said about " natural right " and the " flexibility of the common law " is equally applicable to an action for criminal conversation. If the husband has such an action, why should not the wife? The reasons for giving the action to the one are as potent for giving the action to the other, as I have above demonstrated. The common law is not rigid and inflexible, a thing dead to all surrounding and changing conditions, it does expand with reason. The common law is not a compendium of mechanical rules written in fixed and indelible characters, but a living organism which grows and moves in response to the larger and fuller development of the nation. In *Colwell* v. *Tinker* (169 N. Y. 531) this court said regarding an action for criminal conversation brought by a husband: " While loss of service is usually pleaded in this form of action, yet its real foundation is the *personal injury* inflicted upon the husband. The offense charged is a most grievous wrong against social order and society; it strikes at the foundations of the home and the legitimacy of offspring. The husband, who is entitled to live with his wife and enjoy her society in the marriage relation, finds himself

humiliated and, to a certain extent, disgraced by a public scandal; the marriage bed is dishonored; his domestic peace and comfort are destroyed and he is subjected to great mental suffering." (p. 536.) Are we prepared to say that humiliation, disgrace, dishonor and mental suffering afflict a husband but do not afflict a wife? The law is not so foolish. The United States Supreme Court in this same case (193 U. S. 473) said: " Many of the cases hold that the essential injury to the husband consists in the defilement of the marriage bed, in the invasion of his exclusive right to marital intercourse with his wife and to beget his own children. This is a right of the highest kind, upon the thorough maintenance of which the whole social order rests, and in order to the maintenance of the action it may properly be described as a property right." (p. 484.) With the exception of the begetting of children, all these reasons apply equally to the wife. As I have above stated, his interest in the begetting of his own children is equalized by the wife's interest in having a clean man and healthy children.

In fact, there has been no objection raised anywhere to the right of the wife to maintain the action for criminal conversation except the plea that the ancient law did not give it to her. Reverence for antiquity demands no such denial. Courts exist for the purpose of ameliorating the harshness of ancient laws inconsistent with modern progress when it can be done without interfering with vested rights.

Our statutes have also been touched with this spirit of advance so that we now find in section 57 of the Domestic Relations Law (Cons. Laws, ch. 14) the following: "A married woman has a right of action for an injury to her person, property or character or for an injury arising out of the marital relations, as if unmarried." Section 37-a of the General Construction Law (Cons. Laws, ch. 22) defines " personal injury " as including criminal conversation.

Adultery is now a crime. Section 100 of the Penal

Law says: " Adultery is the sexual intercourse of two persons, either of whom is married to a third person." There is no distinction here in the criminal law between husband and wife. Either may be guilty of the crime. If the offense committed by the defendant in this case be considered so serious in its consequences as to be condemned by the Penal Law and made a crime, can it be said that the wife of the husband with whom the act has been committed has suffered no injury, or if injured that the law will afford her no relief in a civil action, although giving it to the husband under similar circumstances?

When we concede that a wife may maintain an action for alienating the affections of her husband, we virtually admit that she may also maintain an action for criminal conversation. While adultery is the sole basis of the latter, it is almost universally the chief element, of evidence in the former.

Other states have equalized these rights between husband and wife and given to her an action for adultery when the husband was permitted to sue for like cause. In *Nolin* v. *Pearson* (191 Mass. 283) it was said (286): " When approached in the light of an abstract right arising from and incidental to the civil institution known as marriage, but which as between the parties is treated as a contract, and the consequent conjugal relation, there is great inherent difficulty in sustaining the proposition that, while the husband can demand the right of exclusive marital aid and affection, the wife has no equivalent right, or that a sound public policy requires that she shall remain faithful to her marriage obligations, although he is at liberty to enter upon a course of conduct which may render further marital relations on her part impossible. * * * We are aware that in a few jurisdictions either from the construction of enabling statutes, which are held to confer upon a married woman only the right to sue for injuries to her person or for damages to her property, or for reasons of public policy, a cause of action for

criminal conversation with her husband has been denied. * * * But the conclusion to which we have come is supported by the great weight of American authority."

In *Turner* v. *Heavrin* (182 Ky. 65) the court said, in maintaining an action by the wife for criminal conversation (67): " A fundamental right which flows from the relation of marriage, and one which the well-being of society requires should be maintained inviolate, is that of exclusive marital intercourse, which each acquires with the other. From this it follows that whenever either party commits adultery, he or she commits a trespass upon the rights of the other." (See to the same effect *Rott* v. *Goehring*, 33 N. D. 413; *Parker* v. *Newman*, 75 So. Rep. [Ala.] 479; *Dodge* v. *Rush*, 28 App. Cas. [D. C.] 149.) In this latter case it was said (152): " The underlying ground of the common law rule of discrimination between husband and wife in respect of this right, namely, the incapacity of the wife to maintain a separate action for a tort, has been swept away by the modern legislation that has so generally relieved the wife of the ordinary disabilities of coverture. * * * (153.) While the injurious consequences of a wife's adultery may be more far-reaching because of probable difficulties and embarrassments in respect of the legitimacy of children, her conjugal rights are in principle the same, substantially, as his. Whatever the ancient doctrine may have been, modern morals and law recognize the equal obligation and right of husband and wife. Nor can the consent of either to his or her defilement affect the right of action of the injured spouse against the other wrongdoer."

Section 349 of the Civil Practice Act does not express any legislative intent regarding this question. That provision simply declares a rule of evidence.

It is no answer to the wife's claim in this action to say that in other jurisdictions the action for criminal conversation has been altogether abolished. We are here dealing with the law of the state of New York. Such

an action still exists and we are merely holding that what is law for the man is also law for the woman.

Neither is it an objection to say that a distinction still exists at law between the husband and wife in that the husband is given a cause of action for a personal injury to the wife resulting in the loss of her services, when a like action is not given to the wife for an injury to the husband. The reason for this rule is that the wife at law is supposed to render services in and about the home and in caring for the children. It is because there is *no* reason for denying the woman the right to maintain the action for criminal conversation when the action is given to the husband, that we come to our present conclusion in this case.

For the reasons here stated the judgment of the Appellate Division must be modified by granting a new trial and as so modified affirmed, with costs in this court and Appellate Division to abide the event.

HISCOCK, Ch. J., HOGAN, CARDOZO and POUND, JJ., concur; McLAUGHLIN, J., dissents on ground that decision about to be made changes the law of the state in a manner which should be effected by legislation; ANDREWS, J., absent.

Judgment accordingly.