# Staunton.

## PEARL VANDERPOOL, ET AL, V. MAUDIE RYAN AND MATILDA HARTSOCK.

### September 20, 1923.

1. MARRIAGE—*Common Law Marriage.*—A common law marriage is void in Virginia.

2. MARRIAGE—*Presumption of Marriage—Repute and Cohabitation.*—While, in the interest of morality and decency, the law presumes a marriage between a man and woman, when they live ostensibly as husband and wife, demean themselves toward each other as such, and are received and treated by their friends and relatives as having and being entitled to that status, nevertheless mere cohabitation and repute do not constitute marriage, and are only evidence tending to raise that presumption, which, like other presumptions of fact, can be overcome by countervailing evidence.

3. MARRIAGE—*Presumption—General Reputation.*—To raise a presumption of marriage, the reputation must be founded on general opinion, and not upon divided or singular opinion.

4. MARRIAGE—*Presumption—Time and Place.*—If one undertakes to establish a marriage at one time and place, he cannot rely upon other facts and circumstances to raise a presumption of marriage at some other time and place.

5. MARRIAGE—*Evidence of Marriage—Cohabitation and Repute—Case at Bar.*—The facts shown in the instant case were insufficient to prove even a common law marriage, but clearly indicated a meretricious union.

6. MARRIAGE—*Evidence to Establish Marriage—Case at Bar.*—In the instant case complainant testified that she was married in Catlettsburg, Ky.; that she and her alleged husband arrived in Catlettsburg at 7:30 P. M., and that upon their arrival, the alleged husband went away and returned with a man, whom she understood to be a preacher, and with a paper which she understood to be a license, and that they were married by this man at the hotel about half an hour after their arrival at Catlettsburg. Complainant never produced her marriage certificate, nor any person who had seen it, and was unable to introduce or name a single witness who could support her testimony. The local officials then in office testified that no such license for this marriage, as alleged by complainant, was ever

issued. The proprietor of the hotel and his wife testified that no such marriage took place at their hotel; that they knew the alleged husband well and remembered when he brought complainant there as his wife on the date of the alleged marriage.

*Held:* That complainant had not sustained the burden of proof imposed upon her to establish a ceremonial marriage.

7. BASTARDY—*Legitimation—Section 5270 of the Code of 1919.*—It is essential, in order to legitimize issue under section 5270 of the Code of 1919, that there be a marriage of some kind, or the statute can have no application. It does not legitimize issue which is the result of illicit intercourse. There must be a marriage, although it may be one which is null and void for any of several reasons.

Appeal from a decree of the Circuit Court of Russell county. Decree for defendants. Plaintiffs appeal.

*Affirmed.*

The opinion states the case.

*Finney & Wilson* and *S. B. Quillen,* for the appellants.

*Bird & Lively* and *M. M. Long,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

The appellants, a young mother and her infant child, claiming to be the widow and heir at law of Charles H. Vanderpool, filed their bill against the appellees, his mother and sister, who had possession of his estate and claimed it as his sole heirs at law and distributees. The defendants took issue upon the allegations of the bill and denied the alleged marriage of the adult complainant with Vanderpool. The vital and controlling issue presented is whether or not such a marriage ever occurred. The case has been elaborately argued, but we think it unnecessary to discuss any of the other incidental or collateral issues of fact.

1. For the establishment of her claim the adult com-

plainant alleges a ceremonial marriage which she says occurred at the Magann hotel, in Catlettsburg, Ky., on the evening of June 4, 1918, after the arrival of the 7:30 o'clock train, and she relies solely upon her own evidence to establish this marriage. She testifies that after their arrival at the hotel, Vanderpool went away and soon returned with a man, whom she understood to be a preacher, with a paper which she understood to be a license, and that they were married in the hall of the hotel about half an hour after they arrived at Catlettsburg. She says that there were no witnesses to the marriage except a man, whom she did not know, who was seated at a desk where he could see them; that she was introduced to the preacher, but that she could not tell his name or what church he belonged to, and thinks he remained about twenty-five minutes but does not know. They returned to the home of his mother, in Virginia, and claimed to have been married, but although the marriage certificate was alluded to by inquiring friends who manifestly doubted whether they had been actually married, it was never produced to any other person, and so far as this record shows no other person ever saw it. Some of the witnesses testified that it was generally understood in the vicinity that they were married, and that they were accepted as man and wife, while many others say that their alleged marriage was discussed and questioned, so that public opinion was divided as to whether or not they had actually been married. She gave birth to a child within three months after this alleged ceremony, and one of the remarkable features of this unusual case is that she admits that she stated to the mother of Vanderpool that another man, whose name she gave, was the father of this child, and she undertakes to explain this by saying that she did it at the bidding of Vanderpool. His dissatisfaction with her at

this time and his disclaimer of its paternity clearly in-- dicates his shame and mortification. This child died within eleven days after its birth. He left home for a short while after its birth, but soon returned and re- sumed his apparent matrimonial relations with his al- leged wife.

Vanderpool died in December, 1918, within less than seven months from the date of the alleged ceremony, and the infant complainant here was born after his death, on July 16th following.

The defendants, to maintain the issue on their part, showed that the Kentucky statute requires a license, which can only be issued by the clerk of the county in which the woman resides at the time, or in case of his absence, or during a vacancy in the office, by the judge of the county court; and that it requires the celebrant of the marriage to return the license to the clerk by whom it was issued, with a certificate giving the date and place of the celebration, with the names of two or more witnesses of the ceremony. They show by the local officials then in office that no such license for this marriage was ever issued. They further show by the testimony of the proprietor of the hotel and his wife, who together operated it, that they knew Vanderpool well, and that no such marriage ever occurred at their hotel either on the date alleged or at any other time. They recollect distinctly the occasion when Vanderpool brought a young woman there as his wife, on the 4th day of June, 1918, and that they occupied a room to-- gether at that time. Their evidence is clear, positive, detailed and convincing.

[1] That a common law marriage, or attempted mar-- riage, in Virginia, is void here is settled by the case of *Offield* v. *Davis*, 100 Va. 250, 40 S. E. 910.

[2-4] The case of *Eldred* v. *Eldred*, 97 Va. 606, 34 S.

E. 477, affirms certain principles which determine this case. It is there held that to raise the presumption of marriage, the reputation must be founded on general opinion and not upon divided or singular opinion; that while, in the interest of morality and decency, the law presumes a marriage between a man and woman when they live ostensibly as husband and wife, demean themselves toward each other as such, and are received and treated by their friends and relatives as having and being entitled to that status, nevertheless mere cohabitation and repute do not constitute marriage and are only evidence tending to raise that presumption, which like other presumptions of fact can be overcome by countervailing evidence. It is also there held that if one undertakes to establish a marriage at one time and place, he cannot rely upon other facts and circumstances to raise a presumption of marriage at some other time and place.

[5] The facts shown in this case are insufficient to prove even a common law marriage, but clearly indicate a meretricious union.

*Reynolds* v. *Adams*, 125 Va. 295, 99 S. E. 695, was a very close case, but under the facts there shown it was held that there had been a ceremonial marriage in New Jersey. The principles governing such cases are there fully set forth, and repetition is unnecessary.

[6] Our conclusion, upon the issue of fact raised by the appellants, accords with that of the trial judge. Considering the testimony of the appellant herself, it seems to us clear that she has not sustained the burden which the law imposes upon her to establish the ceremonial marriage which she alleges occurred. It seems to us incredible that such a marriage could have been celebrated at the time and place stated by her, within such a recent period, and that she should be unable to

introduce or name a single witness who could support her testimony. When to this lack of corroboration is added the affirmative testimony of the public officials at Catlettsburg, Ky., and that of the hotel keeper and his wife, it appears to us to be morally certain that there never was any marriage between these parties, and hence that the adult complainant is not the widow of Charles H. Vanderpool.

[7] 2. It is claimed, however, that conceding the fact that the alleged widow has no claim, nevertheless, under Code, section 5270, the infant complainant is the heir at law of his reputed father.

That section provides that the issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate.

It is held in *Greenhow* v. *James' Ex'r*, 80 Va. 636, 56 Am. Rep. 603, that this section does not legitimate issue of cohabitation between a white person and a negro who afterwards marry in a State where such marriages are lawful. So far as we have observed, it is essential, in order to legitimize issue under this statute, that there be a marriage of some kind or the statute can have no application. It does not legitimize issue which is the result of illicit intercourse. There is a similar statute in Arizona, which was construed *In re Walker's Estate*, 5 Ariz. 70, 46 Pac. 67. It is held there, where there is also a statute making marriage between white persons and Indians illegal and void, that where there is such a void marriage between a white man and an Indian woman, solemnized in accordance with the law of the tribe of which the woman was a member, followed by cohabitation on the reservation, a child of such a union does not inherit from his father.

In Missouri, where marriages between negroes and whites is prohibited, it is held in *Keen* v. *Keen*, 184 Mo.

358, 83 S. W. 526 (writ of error dismissed, 201 U. S. 319, 26 Sup. Ct. 494, 50 L. Ed. 772), that cohabitation between such persons raises no presumption of a common law marriage, because their action would be criminal, and that the children of such a marriage do not inherit from the father under such a statute.

*In re Shipp's Estate,* 168 Cal. 640, 144 Pac. 143, where there was a ceremony of marriage performed by a priest, and the marriage was in every respect regular save that there was no license, it was held that children of such a marriage, otherwise legal, would inherit under such a statute.

Other pertinent cases are collected in L. R. A. 1916C (note), 764.

While the case is one which arouses the sympathy, we can not find any legal justification for holding that this infant is entitled to inherit from Charles H. Vanderpool under this statute. It is apparent from its language that in order that the statute may operate, there must be a marriage. It may be a marriage which is null and void for any of several reasons, but though the marriage itself be void, the issue is by the statute legitimated. In this case, however, there has not only been a failure of proof that there ever was any marriage, but the proof is convincing to the contrary.

Our conclusion, therefore, is to affirm the decree of the trial court for the same reason which actuated the trial judge—that is, because the complainants have failed to sustain the burden of proof.

*Affirmed.*