# Staunton

## VESTA NEWSOM V. MYRTLE FLEMING.

September 19, 1935.

Present, Campbell, C. J., and Holt, Gregory, Browning
and Eggleston, JJ.

The opinion states the case.

*S. H. & George C. Sutherland,* for the plaintiff in error.

*W. B. Phipps* and *E. J. Sutherland,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

Myrtle Fleming, plaintiff in the lower court, filed her petition for attachment in the clerk's office of Dickenson county, against Vesta Newsom, claiming damages in the sum of $5,000 for alleged criminal conversation with and alienation of the affections of her husband, Earl Fleming. An attachment was issued, pursuant to statute, and levied on an automobile in Dickenson county and other personal property in Wise county.

At the October term of the court the defendant appeared and filed a paper designated in the court order as "Grounds of Defense." Defendant also filed a demurrer to the petition and a plea designated a plea in abatement.

The court on demurrer held the plea in abatement bad, for the reason that it failed to show in what county or State the defendant resided and where the cause of action arose, and omitted the prayer of judgment. The court, upon a hearing, sustained the motion of defendant to quash the attachment, on the ground that the plaintiff failed to show by a preponderance of the evidence that defendant was a non-resident of Virginia.

Issue being joined by the filing of defendant's grounds of defense, the case was submitted to a jury on the merits, and a verdict was returned in favor of the plaintiff in the sum of $4,000.

The defendant, Vesta Newsom, assigns as error the action of the court in sustaining the demurrer to the plea in abatement. Counsel for defendant concede that the plea in abatement was not sufficient, if filed in an action at law, but contend that since this is a proceeding based upon a petition for an attachment or notice of motion, that the strict rule of pleading applicable to a plea in abatement is here inapplicable.

In *International Brotherhood of Boilermakers, etc.* v. *Wood,* 162 Va. 517, 530, 175 S. E. 45, 49, the same contention was made in regard to a plea in abatement filed in an action instituted by notice of motion. In holding that the strict rule of pleading was applicable when a plea in

abatement was filed in a proceeding by notice of motion, Mr. Justice Epes said:

█ "Pleas in abatement are not regarded with favor, and, in order to discourage them, they are required to be drawn with accuracy and precision. The material facts should be directly and positively alleged with certainty. They should not be left to inference or stated merely by way of recital. *Guarantee Co.* v. *First National Bank,* 95 Va. 480, 28 S. E. 909; *Quarrier* v. *Peabody Ins. Co.,* 10 W. Va. 507, 27 Am. Rep. 582; *Grand Lodge Brotherhood of L. F.* v. *Cramer,* 164 Ill. 9, 45 N. E. 165."

█ There is no merit in this assignment of error.

The overruling of defendant's demurrer to plaintiff's petition is assigned as error. The grounds of demurrer relied on are:

"(1) There is no right of action by a wife against another woman for criminal conversation with her husband.

"(2) There is no right of action by a wife for the alienation of the affections of her husband; and if so, no facts are alleged showing any such alienation."

The basis of plaintiff's claim against defendant was alleged criminal conversation with and alienation of the affections of plaintiff's husband.

The demurrer raises for the first time this novel and interesting question: Can a married woman bring an action for damages for the seduction of the husband and alienation of his affection?

In Virginia the common law obtains, except where the Constitution and statutes forbid. By reason of the idea now generally regarded obsolete, that the wife was the inferior of the husband, the wife had no such right of action at common law as is here claimed.

█ Has the common law rule been abrogated in Virginia? We are of opinion that it has been emasculated by judicial sanction and abrogated by statute.

The case of *Harlow* v. *Harlow,* 152 Va. 910, 143 S. E. 720, is apposite. Gladys Cowles Harlow, the wife of John M. Harlow, brought an action against the parents, the broth-

ers and sisters of her husband to recover damages for alleged alienation of her husband's affection. Though the defendants were represented by eminent counsel, no question whatever was raised as to the right of the plaintiff to bring the action. The case was tried upon the merits before a jury and resulted in a verdict for the plaintiff in the sum of $20,000. The trial court overruled the motion to set aside the verdict but did reduce the verdict to the sum of $13,500, and entered judgment thereon. That judgment, in an opinion by Judge Chichester, this court unanimously affirmed.

The case of *Commonwealth* v. *Rutherfoord,* 160 Va. 524, 169 S. E. 909, 911, 90 A. L. R. 348, is also illuminating. That was a case involving the right of the Commonwealth to assess for taxation the income and intangible personal property of a married woman who claimed to be domiciled in New York, though her husband was a citizen of Virginia. In an elaborate opinion, Mr. Justice Browning deals with the various statutes defining the present day status of a married woman in Virginia and reaches the conclusion that by the enactment of section 5134 of the Code, the legislature intended to wipe out every vestige of the common law fiction that the husband and wife were to be regarded as one and to place the wife on an equality with the husband in all matters pertaining to their civil and political rights, unless otherwise indicated in the statutes. That section reads in part: "A married woman may contract and be contracted with, sue and be sued, in the same manner and with the same consequences as if she were unmarried." In the opinion it is said:

"In the case of *Edmonds* v. *Edmonds,* 139 Va. 652, 124 S. E. 415, 416, this court, in speaking of the effect of section 5134, said: 'Indeed it has now wiped aside every vestige of control the husband ever had under the common law, and all his rights as husband except as to courtesy.' "

That holding is in line with the great weight of authority as is shown by the text and authorities cited in 13 R. C. L., page 1460, section 509. There we read:

■ "Under the modern statutes, which enable a married woman to sue in her own name without the joinder of her husband, and confer on her the right to hold damages recovered for injury to her property rights as her separate property, thus placing her on an equality with her husband, it is the prevailing view that a wife may maintain an action against a third person for the alienation of the affections of, or the enticing away of her husband, thereby depriving her of her right to his support and society; and that her right to the companionship and society of her husband is on the same legal standing as the right of the husband to her society and should be afforded the same protection. It seems, moreover, on principle that the effect of the statutes giving a married woman plenary power to sue as if sole and enjoy the proceeds of a recovery, is to enable her to maintain such an action even if the cause of action arose before the statutes took effect. This view sustaining the right of a married woman to maintain this class of action is most eminently proper if the right of a wife to the consortium of her husband is a legal right in which she is entitled to protection. The statutes having removed her common law disability to sue without the joinder of her husband and having given her the right to hold to her separate use damages recovered for the invasion of her rights, the reasons for the common law rule denying her the right to sue for the enticement away of her husband no longer exist and with the cessation of the reasons for the rule the rule itself also ceases."

See also *Williamson* v. *Osenton,* 232 U. S. 619, 34 S. Ct. 442, 58 L. Ed. 758.

In *Oppenheim* v. *Kridel,* 236 N. Y. 156, 140 N. E. 227, 28 A. L. R. 320, it was held that a woman, as well as a man, may maintain an action for criminal conversation. In speaking of that decision, Mr. Justice Cardozo (then Chief Justice of the New York Court of Appeals), in a lecture delivered before the Yale Law School, said:

"We take a false and one-sided view of history when we ignore its dynamic aspects. The year books can teach us how a principle or a rule had its beginnings. They can not teach us that what was the beginning shall also be the end. * * *

"I find again in a recent judgment of my own court the case that points my meaning. We held a little while ago in *Oppenheim* v. *Kridel,* 236 N. Y. 156 (140 N. E. 227, 28 A. L. R. 320), that a woman, as well as a man, may maintain an action for criminal conversation. The court of intermediate appeal had ruled that the action would not lie. To make out the woman's disability, precedents were cited from the time of Lord Coke. Stress was laid upon pronouncements in those days that a man had a property right in the body of his wife. A wife, it was held, had none in the body of her husband. Stress was laid also upon rulings made in days when the wife was unable, unless the husband joined with her as plaintiff, to sue for any wrong. We did not ignore these precedents, but we held them inconclusive. Social, political, and legal reforms had changed the relations between the sexes, and put woman and man upon a plane of equality. Decisions founded upon the assumption of a bygone inequality were unrelated to present-day realities, and ought not to be permitted to prescribe a rule of life. * * * One court, in its interpretation of legal history, was satisfied to treat as finalities the precedents of ancient year books. The other found a stream of thought, a tendency, a movement forward to a goal. Which, then, is the truer use of the historical method? Which exhibits the saner and sounder loyalty? Shall the significance of events be determined by transporting them to our own time and viewing them as if they were the product of our own day and thought, or by viewing them as of the time of their occurrence, the product of their era, the expression of its beliefs and habits?"

■ The assignment of error is without merit.

It is assigned as error that "the court erred in over-ruling the motion to set aside the verdict because no marriage was proven."

The plaintiff testified that she was married to Earl Fleming in Dickenson county by the Reverend Billy Sutherland; that as a result of this union six children were born; that she and her husband lived together until he became criminally intimate with the defendant.

The sole contention of the defendant is that the evidence is insufficient to show a marriage, for the reason that a marriage license was not introduced in evidence. The record does not contain all the evidence introduced upon the trial as is clearly shown by the only Bill of Exception embodied in the record. However that may be, the Bill of Exception does show that "other witnesses without objection spoke of them as husband and wife."

In *Offield* v. *Davis,* 100 Va. 250, 40 S. E. 910, it was held that a marriage, in order to be constituted a valid marriage, must be shown to have taken place under a license and to have been solemnized according to the statute. That case is relied upon as controlling authority in the present case. Counsel seem to have confused proof of marriage and validity of marriage.

In *Eldred* v. *Eldred,* 97 Va. 606, 34 S. E. 477, Judge Cardwell held that in Virginia marriage may be proved in civil cases by reputation, declaration and conduct of the parties. That case was followed by *Reynolds* v. *Adams,* 125 Va. 295, 99 S. E. 695; *Vanderpool* v. *Ryan,* 137 Va. 445, 119 S. E. 65. In both cases it was held that in the interest of morality and decency the law presumes marriage between a man and woman when they live together as man and wife, demeaning themselves towards each other as such, and that status in society is recognized by their friends and relatives.

While it is true, however, that cohabitation and repute do not constitute marriage, they do constitute strong evidence tending to raise a presumption of mar-

riage, and the burden is on him who denies the marriage to offer countervailing evidence.

■ In the case at bar the defendant offered no evidence, so far as the record discloses. Having elected to remain silent when it was her duty to speak, she will not be permitted to raise the question after verdict.

The judgment of the trial court is plainly right and it will be affirmed.

*Affirmed.*