William C. GROVE, Sr. and Rozalia Miller, administratrix of the Estate of William C. Grove, Jr., deceased, Plaintiffs,

v.

UNITED STATES of America
and
Metropolitan Life Insurance Company,
Defendants.

Civ. A. No. 2471.

United States District Court
E. D. Virginia,
Norfolk Division.

Feb. 10, 1959.

Howard I. Legum, Norfolk, Va., for plaintiffs.

John M. Hollis, U. S. Atty., Norfolk, Va., Wolcott, Wolcott & Payne, Edward W. Wolcott and Daniel H. Payne, Norfolk, Va., for defendants.

WALTER E. HOFFMAN, District Judge.

This is a controversy over the proceeds of a life insurance policy in the sum of $4,000 issued by defendant, Metropolitan Life Insurance Company, pursuant to the provisions of the Federal Employees' Group Life Insurance Act of 1954 (5 U.S.C.A. §§ 2091–2103), on the life of William C. Grove, Jr., who died on March 8, 1956, a resident of the City of Norfolk, Virginia, in which city he was, during the later years of his life, employed by the federal government in a civilian status. The insurance company paid the proceeds of said policy to the duly qualified guardian of a child born as the result of a purported marriage between decedent and one Nan M. Grove.

The action was originally instituted by plaintiffs against the United States of America as the sole defendant. Upon the hearing on a motion to dismiss as filed by the United States of America, the Court expressed the view that, under the facts of this case and the Act in question, an action could be maintained against the sovereign only if it could be shown that the Government had failed to cause the issuance of the insurance contract in the proper amount according to decedent's salary earned as an employee. Deferring any ruling on the motion to dismiss, the Court permitted plaintiffs to add the insurance company as a party defendant. At the time of trial, plaintiffs conceded that no evidence could be produced to refute the fact that $4,000 was the proper amount of insurance to be issued. The United States of America was thereupon dismissed as a defendant.

The issue presented for determination is whether a child of a marriage deemed null in law is entitled to the proceeds of a Federal Employees Group Life Insurance policy, where no beneficiary is designated by the decedent and there is no lawful widow.

The statute, 5 U.S.C.A. § 2093, provides, in part, as follows:

"Any amount of group life insurance * * * in force on any employee at the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death in the following order of precedence:

"First, to the beneficiary * * as the employee may have designated * * *;

"Second, if there be no such beneficiary, to the widow * * *;

"Third, if none of the above, to the child or children of such employee and descendents of deceased children by representation;

"Fourth, if none of the above, to the parents of such employee."

William C. Grove, Sr., claims the proceeds of said policy as the father of decedent, contending that the language of the statute contemplates a "legitimate child" as the only eligible child entitled to receive. He draws an analogy to the provisions of the Social Security Act, 42 U.S.C.A. § 401 et seq.; the Federal Employers' Liability Act, 45 U.S.C.A. § 51; the National Service Life Insurance Act, 38 U.S.C.A. § 802(g); the various state Wrongful Death Acts; and the first World War Veterans Act, 38 U.S.C.A. § 421 et seq.

The plaintiff, Rozalia Miller, in her capacity as administratrix of the estate of William C. Grove, Jr., originally claimed the proceeds as assignee of Nan M. Grove, but counsel conceded that this plaintiff was not entitled to recover.

The facts are not essentially controverted. The deceased failed to exercise his privilege by way of beneficiary designation. According to Nan M. Grove, she

and the decedent were married by a Justice of Peace in Burlington, North Carolina, on December 24, 1937. Her maiden name was Nan Laura Roberts and she had been previously married to Leo Mulvaney who died on November 9, 1934. The parties lived together as husband and wife from the time of the alleged marriage ceremony until the fall of 1946 when they separated while living in Asheville, North Carolina. In the interim they had also lived in Bluefield, West Virginia, and Lynchburg, Virginia. The child, who is the recipient of the proceeds of the insurance policy in question, was born in Bluefield on November 19, 1938; the birth certificate reciting that Margaret Cameron Grove was the daughter of William C. Grove and Nan M. Grove. Following decedent's death in 1956, the decedent's sister, Rozalia Miller, notified Nan M. Grove and Margaret Cameron Grove, and they came to Norfolk to attend the funeral.

When Nan M. Grove made application for the proceeds of the insurance as the "widow", an investigation developed that decedent had previously married one Ruth Harris. Subsequently, on August 8, 1938, decedent was divorced from Ruth Harris Grove by decree of the General County Court of Alamance County, North Carolina. Assuming that decedent and Nan M. Grove went through the form of a marriage ceremony on December 24, 1937, the marriage was obviously a bigamous one. There is no contention that decedent and Nan M. Grove ever went through any other ceremony. Although Nan M. Grove made an effort to secure documentary evidence of her marriage to decedent, she was unable to do so, and she apparently did not ascertain the facts of her bigamous marriage until after decedent's death. The State of North Carolina does not recognize a common-law marriage. § 51-1, General Statutes of North Carolina.

With one minor exception hereinafter noted, all friends and members of decedent's family were of the opinion that the marriage was lawful during decedent's lifetime. The many letters, cards, and notes from the decedent, his mother, and sister mailed to Nan M. Grove and her daughter, Margaret Cameron Grove, conclusively prove that all parties treated the marriage as lawful. Indeed, on February 14, 1956, three weeks prior to his death, decedent sent a Valentine greeting card to Nan M. Grove upon which is imprinted, "To My Wife on Valentine's Day," and signed in decedent's handwriting, "I love you, Buster." On the same day, decedent sent to Margaret Cameron Grove a card upon which is imprinted, "A Valentine for Daughter," and signed in decedent's handwriting, "Love, Daddy."

Decedent's father, William C. Grove, Sr., who would be entitled to receive the proceeds of the policy if wrongful payment was made to the child, testified that, in 1955, decedent told him, "Nan and I were never married." The statement was not amplified by the witness. Even if the statement was made as related by plaintiff, it proves nothing but an inference. Perhaps decedent was merely giving his legal conclusion as to the status of the marriage in view of his knowledge that any marriage was bigamous because of his prior marriage to Ruth Harris Grove. More probably, however, he intended to convey the impression that any ceremony entered into on December 24, 1937, was a fraud in that no recordation of any such marriage existed. At no time did decedent ever state that he did not go through the form of a marriage ceremony with Nan M. Grove.

The question as to whether decedent and Nan M. Grove ever went through a marriage ceremony, even though it be a nullity, is important to a determination of this case. A child born of a purely meretricious relationship is not made legitimate under § 64-7 of the Code of Virginia, 1950, the pertinent portion of which is as follows:

"The issue of marriages deemed null in law * * * shall nevertheless be legitimate."

It follows, therefore, that the law of Virginia contemplates a marriage ceremony. If the word "child" as used in the

Federal Employees Group Life Insurance Act is to be interpreted under state law, and not federal law, a marriage of some kind is necessary to legitimatize the issue which is the result of intercourse. Vanderpool v. Ryan, 137 Va. 445, 119 S.E. 65. The parties are in substantial agreement that the law of Virginia is controlling for the purpose of determining the familial relationship, and Virginia is particularly appropriate in this case as the law of the decedent's domicile (Virginia) controls the distribution of personalty.

■■ When we examine the authorities on the subject, we find the existence of a strong presumption of marriage arising from the good faith declarations of the parties to the effect that they were married; that they lived together and demeaned themselves as husband and wife; that the family thought the marriage to be valid; and that the general reputation supported a marriage. In many instances the failure to produce a marriage certificate or registry has been deemed unnecessary as proof of the marriage. Reynolds v. Adams, 125 Va. 295, 99 S.E. 695; Newsom v. Fleming, 165 Va. 89, 181 S.E. 393; McClaugherty v. McClaugherty, 180 Va. 51, 21 S.E.2d 761; Womack v. Tankersly, 78 Va. 242. There is, of course, a sharp distinction between proof of marriage and proof of a valid marriage. Newsom v. Fleming, supra. In Eldred v. Eldred, 97 Va. 606, 34 S.E. 477, 484, the presumption of marriage is stated:

> "This [strong presumption] is especially true in a case involving legitimacy. The law presumes morality; marriage, and not concubinage; legitimacy and not bastardy."

In the more recent case of Coureas v. Allstate Insurance Co., 198 Va. 77, 92 S.E.2d 378, 381–382, it is said:

> "Where a man and woman live together and demean themselves toward each other as husband and wife, the law presumes that they have been legally married. While ' " 'cohabitation and repute do not constitute marriage they do constitute strong evidence tending to raise a presumption of marriage, and the burden is on him who denies the marriage to offer countervailing evidence.' " ' "

Where an attack is made upon the marriage, the burden is clearly upon the attacking party. Parker v. American Lumber Corp., 190 Va. 181, 56 S.E.2d 214.

We have no difficulty in distinguishing the case of Vanderpool v. Ryan, supra, so strenuously urged in support of plaintiffs' position. The testimony of the alleged wife as to the performance of a marriage ceremony was completely destroyed by the two witnesses identified by her as having witnessed the ceremony. In short, the fact-finding body refused to accept the testimony of the alleged wife as the witnesses testified that no such ceremony was performed.

If facts, aside from documentary proof, give rise to a presumption of a valid marriage, then *a fortiori*, the same facts will give rise to the presumption of marriage which may be deemed null in law.

■ Tested by these principles, the facts of this case, coupled with the strong presumption arising therefrom, establish by a fair preponderance of the evidence that decedent and Nan M. Grove went through a ceremony which purported to unite them in marriage. Certainly, even if we were to disregard the testimony of Nan M. Grove, the plaintiffs have not met the burden imposed upon them to disprove the marriage.

Plaintiffs urge that the Court erred in permitting Nan M. Grove to testify under the theory that she is incompetent by reason of § 8–286 of the Code of Virginia, 1950, which, in substance, provides that no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony in an action by an administrator or heir of a person who is dead or otherwise incapable of testifying. Whether Nan M. Grove is an interested party within the meaning of the statute

is, in this case, immaterial[1]. There is, indeed, ample corroboration from the lips of decedent's sister, Rozalia Miller, who always considered the parties married. The letters, cards, and birth certificate furnish substantial corroborating evidence even if we were to assume that § 8–286 is applicable to the facts of this case—a point that this Court is not ready to concede.

Having concluded that decedent and Nan M. Grove were married, even though the marriage be deemed null· in law, it follows that Margaret Cameron Grove is a legitimate child under § 64–7 of the Code of Virginia, 1950. It has long been established that children of bigamous marriages—as distinguished from one born of a meretricious relationship—are entitled to inherit from the father in Virginia. The 1804 decision in Stones v. Keeling, 5 Call 143, 9 Va. 143, first established this principle and it continues to be the law in Virginia. Heckert v. Hile's Adm'r, 90 Va. 390, 18 S.E. 841; Heflinger v. Heflinger, 136 Va. 289, 118 S.E. 316, 32 A.L.R. 1088; McClaugherty v. McClaugherty, supra. More recently we have the cases of Withrow v. Edwards, 181 Va. 344, 25 S.E.2d 343, modified on other grounds 181 Va. 592, 25 S.E.2d 899, certiorari denied 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 453, and Henderson v. Henderson, 187 Va. 121, 46 S.E. 2d 10. In Henderson, it was held that § 64–7 was not limited to rights of inheritance, but extends to the legitimated child all of the rights of a child born of a legal marriage for all purposes. Plainly, therefore, a "legitimate" child is a "lawful" child, and even though we were to assume that the Federal Employees Group Life Insurance Act, 5 U.S.C.A. § 2093, carried with it the implication that a "child" means a "lawful child", the said Margaret Cameron Grove would be entitled to the proceeds of the policy under the laws of Virginia. It follows that it

is unnecessary to determine whether the word "child" as used in the Federal Employees Group Life Insurance Act is extended to include a child born of a meretricious relationship.

This discussion has been premised on the assumption that the state law governs. But plaintiffs advance the suggestion that the federal law may be controlling. In either event, the plaintiffs cannot prevail. Admittedly, Congress could define the word "child" in such language as to exclude a child born under the circumstances revealed by this evidence. By way of example, the Social Security Act provides (42 U.S.C.A. § 416):

> "In determining whether an applicant is the wife, husband, widow, widower, child, or parent of a fully insured or currently insured individual for purposes of this title, the Administrator shall apply such law as would be applied in determining the devolution of intestate personal property * * *."

Once again we must look to the laws of the applicable state. The authorities cited[2] by plaintiffs from Pennsylvania, New Jersey, and New York need not be considered for this reason.

The syllogism underlying the various state Wrongful Death Acts in treating the rights of an illegitimate child are likewise inappropriate. Virginia has declared that a child of a bigamous marriage is entitled to participate under the Wrongful Death Act by virtue of what is now § 64–7 of the Code of Virginia. Withrow v. Edwards, supra. Some of the other states hold to the contrary, and even in Virginia the child of a meretricious relationship would not be entitled to any portion of the recovery. Brown v. Brown, 183 Va. 353, 32 S.E.2d 79; Vanderpool v. Ryan, supra.

1. Merchants' Supply Co. v. Hughes' Ex'rs, 139 Va. 212, 123 S.E. 355.

2. Warrenberger v. Folsom, D.C.Pa., 140 F.Supp. 610, affirmed, 3 Cir., 239 F.2d 846; Wieczoreck ·v. Folsom, D.C.N.J., 142 F.Supp. 507; Mayers v. Ewing, D.C. Pa., 102 F.Supp. 201; Magner v. Hobby, 2 Cir., 215 F.2d 190, certiorari denied 348 U.S. 919, 75 S.Ct. 305, 99 L.Ed. 721.

Approaching the cases decided under the National Service Life Insurance Act, 38 U.S.C.A. § 801 et seq., it is apparent that Congress endeavored to establish a federal law by the wording of the Act. Uniform treatment and interpretation of the National Service Life Insurance Act is desirable by reason of its widespread application. The same argument may be advanced as to the Federal Employees Group Life Insurance Act. But there are many peculiar problems arising from the familial relationship and, as there is no federal law of domestic relations, the matter is primarily of state concern. Such was the holding in construing the word "children" as contained in § 24 of the Copyright Act, 17 U.S.C.A. § 1 et seq., in De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 980, 100 L.Ed. 1415, where it is said:

> "To decide who is the widow * * * or who are his executors or next of kin, requires a reference to the law of the state which created those legal relationships. The word 'children', although it to some extent describes a purely physical relationship, also describes a legal status * * *. We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' in § 24. This does not mean that a State would be entitled to use the word 'children' in a way entirely strange to those familiar with its ordinary usage, but at least to the extent that there are permissible variations in the ordinary concept of 'children' we deem state law controlling. Cf. Seaboard Air Line Ry. v. Kenney, 240 U.S. 489, 36 S. Ct. 458, 60 L.Ed. 762."

A separate concurring opinion in the foregoing case by Justices Douglas and Black arrives at the same conclusion, but expresses the view that a federal question is presented calling for a federal interpretation to the end that the Act will be uniformly construed and applied throughout the country. In support of this view, Justices Douglas and Black refer to Middleton v. Luckenbach S.S.

Co., 2 Cir., 70 F.2d 326, permitting an illegitimate child to recover benefits under the Death on the High Seas Act, 46 U.S. C.A. § 761 et seq. The same case, Middleton v. Luckenbach S.S. Co., was quoted at length for other reasons by the Supreme Court of Appeals of Virgina in Withrow v. Edwards, supra.

■ Plaintiffs' reliance upon Tatum v. Tatum, 9 Cir., 241 F.2d 401, is of no benefit. While this case involved a controversy over the proceeds of a Federal Employees Group Life Insurance policy, it turned upon the interpretation of the word "widow". By drawing an analogy to cases arising under the National Service Life Insurance Act, the court arrived at the conclusion that the word "widow" as stated in 5 U.S.C.A. § 2093 means "lawful widow". Again the status of the parties was determined by the law of the state where decedent was domiciled at his death, although the court expressed doubt on the point as the action was dependent solely upon the interpretation of a federal statute. Again the ultimate answer under state or federal law was the same. This Court is unwilling, however, to read the word "lawful" into all portions of the Federal Employees Group Life Insurance Act as the same may be applied to children, even if state law is not controlling, because of the humane considerations so adequately expressed in Middleton v. Luckenbach S.S. Co., supra, wherein the state law was held to be inapplicable. For the purposes of this case, however, it is unnecessary to determine whether a bastard may be entitled to receive the proceeds of a policy insured under the Federal Employees Group Life Insurance Act. This Court leans to the view that the state law must control the familial relationship and, in the absence of an expression from Congress, there is no federal law which forbids the payment of the proceeds of the policy to a child of a marriage deemed null in law.

Counsel for the defendant insurance company will prepare a judgment order in accordance with this opinion, which is adopted by the Court in lieu of spe-

cific findings of fact and conclusions of law and, after presentation to opposing counsel for inspection and endorsement, shall present the same for entry. The order shall include a reference to the dismissal of the action as to the United States of America.