[Civil No. 429.   Filed September 8, 1896.]

[46 Pac. 67.]

Estate of JOHN D. WALKER, Deceased.   In re Application
of JUANA WALKER, a Minor, by ROSETTA JONES,
her Guardian, for Distribution.   W. H. WALKER et al.,
Appellees.

1. MARRIAGE—WHITE MAN AND INDIAN—VOID IN 1871—COMP. LAWS
ARIZ. 1877, SECS. 1-4, CHAP. 30, P. 317, CONSTRUED.—Marriage in
fact could not be consummated in 1871 in Arizona between a Pima
Indian squaw and a white man, either by ceremony as provided by
statute, *supra*, for persons capable of contracting the marital rela-
tion, by the customs of said Indian tribe, cohabitation, or any other
method.   Such marriages were null and void.

2. TERRITORIES—SOVEREIGNTY—POWERS OF LEGISLATURE—INDIAN RES-
ERVATION—RESERVATIONS—MARRIAGE OF WHITE MAN AND INDIAN
—ON RESERVATION—VOID—COMP. LAWS ARIZ. 1877, SEC. 3, CITED.
—There is but one sovereignty in Arizona—that of the United
States—which delegates its power to legislature of the territory;
and the legislative acts of the territory being operative in all parts
of the territory, including Indian and all other executive or legis-
lative reservations, unless expressly forbidden by the Congress of
the United States, a marriage of a white man and Indian squaw
according to the customs of her tribe is void, though established
upon an Indian reservation.   Statutes, *supra*, cited.

3. INDIANS—CHILD OF WHITE MAN AND INDIAN—STATUS.—The *status*
of a child of a void marriage between a white man and a Pima
squaw is that of a Pima Indian.

3. DESCENT AND DISTRIBUTION—BASTARD—CHILD OF WHITE MAN AND
INDIAN—REV. STATS. ARIZ. 1887, PAR. 1470, CONSTRUED.—Paragraph
1470, *supra*, provides: "Where a man having by a woman a child or
children, and afterwards intermarrying with such woman, such
child or children, if recognized by him, shall thereby be legiti-
matized and made capable of inheriting his estate.   The issue also
of marriages deemed null in law shall nevertheless be legitimate."
A child of an attempted marriage of a white man and an Indian,
married according to the customs of her tribe, is not legitimate
under the last sentence of said statute.   Both parts thereof re-
quire a marriage, and in such case there is no marriage in fact.

4. APPEAL AND ERROR—PROBATE COURT—DISTRICT COURT—BY SINGLE
PARTY IN INTEREST—JURISDICTION.—Where an appeal is taken from
the probate court by a party having the right to appeal, the whole
matter is taken out of that court, and the district court has juris-
diction.

APPEAL from a judgment of the District Court of the Second Judicial District in and for the County of Pinal. Owen T. Rouse, Judge. Affirmed.

Statement of facts:—

John D. Walker died intestate in Napa County, California, about the second day of September, 1891, and at the time of his death was a resident of Pinal County, Arizona. On September 18, 1891, A. J. Doran was duly appointed administrator of Walker's estate by the probate court of Pinal County, and duly qualified as such. Juana Walker, a minor, by her guardian, Rossetta Jones, filed a petition in the probate court of Pinal County on the twelfth day of May, 1893, asking that an order be made distributing the estate to her, the said Juana, as the sole heir of John D. Walker, deceased. Said petition was resisted by said A. J. Doran, the administrator of said estate, and by William Walker and other brothers and sisters of John D. Walker. By order of said probate court, that petitioner file a bill of particulars, the following bill of particulars was filed, viz: "(1) That the said Juana Walker was born at or near Blackwater, on the Sacaton Indian Reservation, in the county of Pinal, A. T. (2) That the mother of the said Juana Walker was a Pima Indian squaw, named Chur-ga. (3) That Juana Walker is the child of Chur-ga and John D. Walker, and was born on said reservation in lawful wedlock, contracted on said reservation, and while said Chur-ga and John D. Walker were living and cohabiting together as man and wife; and said child, ever since and until the death of said John D. Walker, was recognized and acknowledged by him, the said Walker, to be his child, begotten of the said Chur-ga, on divers and numerous occasions, to divers persons. (4) That the said Chur-ga is dead." The petition of said Juana was resisted by the said administrator and the brothers and sisters of the deceased upon the ground, in effect, that by the petition Juana Walker was not entitled to the estate of John D. Walker; and, further, that John D. Walker left no father or mother or children or their descendants, that he had never married, and that his only heirs were his said brothers and sisters. The case was tried in said probate court, and on July 28, 1893, a judgment was entered in said court in favor of said Juana Walker. Thereafter the

said administrator and the said brothers and sisters appealed the case to the district court of Pinal County. The case was tried anew in said district court, commencing on the twenty-third day of March, 1894, one Isaac D. Smith, a witness for petitioner, being on the stand. Counsel for the respective parties agreed to the following, to wit: "It is consented by the parties hereto that the plaintiff may make the following offer of proof, and the same to stand and to be considered as though raised by apt and proper questions to the witness on the stand: Plaintiff, appellee and petitioner, now offers to prove by the witness on the stand, and will so prove if permitted by the court so to do, that the petitioner is the child of John D. Walker, deceased, and was begotten by him; that her mother was an Indian woman, named Chur-ga, a member of the Pima tribe of Indians, and that John D. Walker, deceased, a white man, was, prior to the conception of the said Juana Walker, on the reservation of the Pima and Maricopa Indians in Arizona, and intermarried with the said Indian woman, Chur-ga, according to the law of the Pima tribe of Indians, and that the said John D. Walker, deceased, recognized petitioner as his child, and supported her; to which proof counsel for appellants (Walker brothers and sisters and the administrator) objected, on the ground that at the time thereof such marriage between a white man and an Indian woman was by the laws of Arizona illegal and void, and the court sustained the objection, and refused to permit such proof of marriage, but would admit the proof of recognition that it was his child and that he had given it support." To the ruling of the court the petitioner, Juana Walker, excepted, but offered no evidence of recognition and support, and appeals.

Fitch & Campbell, J. B. Woodward, Abram Humphries, Barclay Henley, P. B. McCabe, C. W. Wright, and Street & Frazier, for Appellant.

Any act purporting to deal with the domestic concerns of the Indians on their reservations is void. Organic Law of Arizona, sec. 1839; *Goodall* v. *Jackson*, 20 Johns. 693, 11 Am. Dec. 351; *State* v. *McKinney*, 31 Kan. 570, 3 Pac. 356.

The principle involved in this last case, as to the effect of

a general statute of this character on that portion of the state occupied by Indians, is on all-fours with the case at bar, and Congress, recognizing that fact, has passed a special act (sec. 1910, Organic Laws of Arizona), giving to the territorial courts jurisdiction over certain crimes committed by Indians on their reservations, clearly evincing the idea that without such special legislation the territorial courts would have no jurisdiction. The domestic affairs of the Indians, including the laws regulating and controlling Indian marriages, are subject to their own control, only as regulated by Congress. Indians are wards of the government, and not citizens either of the United States or the territory wherein they are situated. They owe the state or territory no allegiance, and are not subject to the duties and responsibilities of citizens. Acts of the territorial legislature purporting to deal with their domestic concerns are void. Acts of Congress, June 30, 1834, 4 Stats. at Large, 732; 15 Stats. at Large, 26; *In re Camille,* 6 Saw. 541, 6 Fed. 256; *United States* v. *Wirt,* 3 Saw. 161, Fed. Cas. Nos. 1674, 1675; *In re Ah Yup,* 5 Saw. 155, Fed. Cas. No. 104; *Kansas Indians,* 5 Wall. 737; *State* v. *Campbell,* 53 Minn. 354, 55 N. W. 553; *Marion* v. *State,* 20 Neb. 233, 57 Am. Rep. 825, 29 N. W. 911.

The Maricopa and Pima Indian reservations, at the time of the marriage of John D. Walker to the Indian woman Chur-ga, upon ·said reservation, was Indian country, and thereby became excluded from the jurisdiction of the territorial laws. *United States* v. *Knowlton,* 3 Dak. 58, 13 N. W. 573; *Spalding* v. *Chandler,* 84 Mich. 140, 47 N. W. 593; *Thompson* v. *Dookson,* 38 Cal. 593; *Smith* v. *Brown,* 8 Kan. 610; *Wall* v. *Williams,* 11 Ala. 839; *Johnson* v. *Johnson,* 30 Mo. 72, 77 Am. Dec. 598.

At the time of the marriage of Walker to the mother of appellant there was no law of Congress prohibiting such an alliance, and since that date Congress has passed an act recognizing the validity of such marriages (25 Stats. at Large, 392), and marriages valid where contracted must be recognized by the laws of the state. *Decouche* v. *Savotier,* 3 Johns. Ch. 190, 8 Am. Dec. 131; *Medway* v. *Needham,* 16 Mass. 157, 8 Am. Dec. 131; *Fornshill* v. *Murray,* 1 Bland. 479, 18 Am. Dec. 344; *Lavivierre* v. *Lavivierre,* 77 Mo. 512; *Hiram* v. *Pierce,* 45 Me. 367, 71 Am. Dec. 555.

W. H. Barnes, J. H. Kibbey, S. M. Franklin, and W. R. Stone, for Appellee.

By the act of 1865, in force for years before this child was born, such a marriage was illegal and void. Comp. Laws, p. 317, sec. 3. It is sought to make it appear that an Indian reservation is not within the territory and not covered by the territorial laws. The law does reach white men who are citizens of Arizona, or those who come within her borders, and prohibits them from marriages with Indians. The laws of the territory reach into the reservation to tax a railroad running over it, and to tax goods, wares, and merchandise thereon. It is not a foreign country in the sense that Arizona must recognize marriages valid where solemnized, though they would have been void here. *Wilbur's Estate* v. *Bingham,* 8 Wash. 35, 40 Am. St. Rep. 886, 35 Pac. 407; *United States* v. *Kagama,* 118 U. S. 375, 6 Sup. Ct. Rep. 1109; *Cherokee Nation* v. *State,* 5 Pet. 20.

If the marriage was void, then this child as the offspring of Chur-ga is an Indian. That is her *status,* and she cannot be anything else. Nothing short of an act of Congress can change this *status.* *Utah R. R. Co.* v. *Fisher,* 116 U. S. 28, 6 Sup. Ct. Rep. 246; *Elk* v. *Watkins,* 112 U. S. 94, 5 Sup. Ct. Rep. 41.

HAWKINS, J. (after stating the facts).—Juana, a Pima Indian girl, by her guardian, claims the estate of John D. Walker, deceased, upon the theory that her mother, Chur-ga, a Pima Indian woman, was married to said Walker, who was a white man, according to the customs of such Indians governing marriage, and that she is the child of such union. The statute in force in Arizona at the date of such pretended marriage,— viz., 1871,—is the following (secs. 1-4, c. 30, p. 317, "Marriages," Comp. Laws Ariz. 1877):

"Section 1. Marriage is considered in law as a civil contract, to which the consent of the parties is essential.

"Sec. 2. All marriages between parents and children, including grandparents and grandchildren of every degree, between brothers and sisters, of the one-half as well as the whole blood, and between uncles and nieces, aunts and nephews, are declared to be incestuous, and absolutely void.

This section shall extend to illegitimate as well as legitimate children and relations.

"Sec. 3.    All marriages of white persons with negroes, mulattoes, Indians or Mongolians, are declared illegal and void.

"Sec. 4. Whoever shall contract marriage in fact, contrary to the prohibitions in the two preceding sections, and whoever shall solemnize any such marriage, shall be deemed guilty of a misdemeanor, and, upon conviction, shall be punished by fine or imprisonment, or both, at the discretion of the jury which shall try the cause, or, if the conviction be by confession, at the discretion of the court, the fine to be not less than one' hundred, nor more than ten thousand dollars, and the imprisonment to be not less than three months, nor more than ten years."

It is readily seen that this pretended marriage, if it had been a marriage in fact, was illegal and void, and imposed no obligation on either party thereto. It was provided by the law then in force that marriages had to be solemnized by certain persons designated. A marriage ceremony had to be performed, and the person officiating was compelled to keep a record thereof. Secs. 6, 8, c. 30. *supra.* There must be a marriage in fact (sec. 4, *supra*), and the person officiating, in addition to keeping a record himself, was compelled to report the marriage to the county recorder, and such recorder had to record the same (sec. 9, c. 30, *supra*). We do not mean to say that if two persons capable of contracting should have done so, and consummated such contract by cohabiting together, and acknowledging that they were husband and wife, and lived all their lives as such, it would not have been a marriage without the aid of a ceremony sufficient for the acknowledged children of such union to inherit. We do hold, however, that marriage in fact could not be consummated at the time this was alleged to have taken place, in Arizona, between a Pima Indian squaw and a white man, either by ceremony as provided in said statute for persons capable of contracting the marital relation, by the customs of said Indian tribe, cohabitation, or any other method. Such marriages were null and void. The two essentials of a valid marriage are capacity and consent. The stipulation of counsel set out in the statement of facts admits that there was no marriage

of the parties by a person authorized to marry them; the union or relation, if any, which existed between Walker and the Indian woman, Chur-ga, was therefore not a marriage in fact. It is also admitted therein that Walker was a white man, and Chur-ga an Indian woman. Those being the admitted facts, the union, as a marriage, would be null and void, and no decree would be necessary to annul it. The learned judge who tried the case therefore committed no error in sustaining the objections to the questions contained in such stipulation with reference to the marriage, as that fact could not establish the rights of appellant as an heir. Such heirship, if any existed, must be established on some other basis,—adoption or acknowledgment. As the court below ruled that appellant could offer any evidence as to her adoption or acknowledgment by John D. Walker, and as she failed to offer any such testimony, she cannot now be heard to complain. If she had offered testimony showing that she was the offspring of an illicit union between John D. Walker and a Pima Indian squaw named Chur-ga, and that she had changed her *status* from a Pima Indian to the child of John D. Walker, who, when he left the Pima Indian Reservation, instead of leaving her there, had taken her with him, and educated her, introduced her to his relatives, and held her out to the world as his daughter, and any and all other probative facts showing that John D. Walker acknowledged her to be his child, and intended her to be his heir, and wanted her to inherit his estate, there might be some basis for her claim.

Appellant contends that the alleged relation between John D. Walker and Chur-ga was a valid marriage, because it was established and existed between them on the Pima and Maricopa Indian Reservation according to the customs of such Indians, and notwithstanding the laws of Arizona forbade such marriages. Such laws were not in force upon the Indian reservation, and such marriage, being valid according to the custom of the Indians upon such reservation, was valid everywhere; i. e. the Indian reservation is the same as a foreign country, and marriages under the Arizona statute then in force, valid in the country where solemnized, were valid in Arizona. This doctrine is not tenable in a territory. There are not two sovereignties here, one for the power owning the reservation and one for the territory. There

is only one sovereignty here,—that of the United States,—which delegates its power to the territory to legislate on all rightful subjects of legislation; and the legislative acts of the territory are operative in all parts of the territory, including Indian and all other executive or legislative reservations, unless expressly forbidden by the Congress of the United States. If both of these parties had been Indians, the courts would recognize such relations as a marriage. Such marriages between a white man and an Indian woman have been upheld by the decisions of some of the states. *Johnson* v. *Johnson,* 30 Mo. 72, 77 Am. Dec. 598; *Wall* v. *Williams,* 11 Ala. 839. In Missouri the doctrine of common-law marriages has always been upheld. *Dyer* v. *Brannock,* 66 Mo. 391, 27 Am. Rep. 359. But such marriages have never been recognized in Arizona, and the marriages held valid in Missouri between a white man and an Indian woman were where the marriage occurred outside of the state in "an Indian country," in another sovereignty; and it does not appear that any law of the state was violated. The alleged marriage being void, it could not be proved for any purpose. The law reached white men in every part of Arizona and forbade such marriage. *Wilbur* v. *Bingham,* 8 Wash. 35, 40 Am. St. Rep. 886, 35 Pac. 407.

.There being no marriage between Walker and Chur-ga, and Chur-ga being a Pima Indian, the child, being her offspring, is a Pima Indian. This is the *status* of Juana. She is a ward of the government, and her *status* so remains until some law of Congress, or the legislation of Arizona under authority of Congress, changes the same. As to whether an Indian is subject to adoption under paragraph 1392 of the Revised Statutes we do not deem it necessary to decide. The court below offered to admit any proof regarding same, but none was offered. It is true that counsel for Juana, in the agreed statement, say that they offer to prove by a witness on the stand, in addition to other things, "that the said John D. Walker, deceased, recognized petitioner as his child, and supported her"; and the court offered to receive any testimony thereon. Yet the court might have sustained any objection to such conclusions. If there were any proof on these questions, the facts should have been offered, so the court could determine whether or not "he recognized her as his child, and supported her." The testi-

mony of the witness Smith does not warrant such conclusious.
It does not prove that John D. Walker publicly acknowledged
claimant to be his child with the intent of making her his
lawful heir, or that he reared and educated her in his own
station of life, and introduced her to his brothers and sisters
as his child, and that he wanted her to inherit his estate. In
order for her to recover this estate, such testimony should
have been offered, and the proof must have been clear and
conclusive. Estates are not to be diverted from the ordinary
channels of the law of inheritance, except upon proof which
is conclusive.

Counsel for appellant contend that as appellant, Juana, is
the child of John D. Walker, and though the marriage between
Walker and Chur-ga, the Indian woman, was void, neverthe-
less she is the heir by virtue of the provisions of paragraph
1470 of the Revised Statutes of Arizona. That paragraph is
in the chapter on "Descent and Distribution," and is as fol-
lows: "Where a man having by a woman a child or children,
and afterward intermarrying with such woman, such child or
children, if recognized by him, shall thereby be legitimatized
and made capable of inheriting his estate. The issue also of
marriages deemed null in law shall nevertheless be legitimate."
In no way can that paragraph be made applicable to the case
at bar. It applies where a man has a child by a woman, and
then marries her, and then recognizing the child, it thereby
becomes legitimatized, and can inherit from him. It requires
marriage and recognition as a condition. The next part de-
clares, "The issue also of marriages deemed null in law shall
nevertheless be legitimate." In both parts of said paragraph
there must be a marriage. In the case at bar there was no
marriage. If said section is applicable without marriage, it
follows that it would make legitimate every bastard; and the
paragraph on that subject would be useless. By paragraph
1471 of the Revised Statutes of Arizona it is provided: "Bas-
tards shall be capable of inheriting from and through their
mother." Thus it will be seen that, notwithstanding para-
graph 1470, there are certain children who are bastards. Bas-
tards are those not born in lawful wedlock. Appellant, not
having been born of parents who had been married, was cer-
tainly a bastard. Counsel for appellant cites the case of *Dyer
v. Brannock*, 66 Mo. 391, as an authority to support his con-

tention that, though the marriage of Walker to Chur-ga was null, yet appellant is legitimate. The facts of that case show: "Zachariah Wilson was a river pilot in 1819, and one Mrs. Collins, a widow, at that time kept a boarding-house in St. Louis. There was evidence to show that Wilson and Jane Collins, the daughter of Mrs. Collins, and then about nineteen years old, on the 24th of August, 1819, about ten o'clock at night, declared their intention, in the presence of the mother and brothers of Jane and several boarders who were present, to live together as husband and wife. There was no magistrate or other person authorized by the statutes of the territory to celebrate marriage rites present on the occasion, but they stood up on the floor of the sitting-room, or most public room in the house, side by side, with joined hands, and it was announced to those present by the mother or brother of Jane that she and Wilson had agreed to marry, to which they both assented by an inclination of the head. They then retired to a bedroom, and cohabited together as man and wife for three weeks. When Major Long reached St. Louis on his expedition to the Rocky Mountains, Wilson joined the expedition. The result of his cohabitation was a daughter named Cynthia Elizabeth, from whom plaintiff's title is derived. It was understood on the departure of Wilson that Mrs. Collins should take care of Jane, and that he would, when opportunity presented, remit some money to support her during his absence, which he occasionally did. Meanwhile, Mrs. Collins and her family removed to St. Charles, and were living there when Wilson returned to St. Louis, in 1824. He was then married, in accordance with the forms provided for by the statute then in force, to Sarah Ann Adams, the owner of the property now in controversy. By this marriage a female child was born in 1826, who survived the mother, and died in 1827. In 1830, after the death of Sarah Ann and her child, Wilson sent for Jane Collins, who was then in St. Charles, and he and Jane Collins afterwards lived together as man and wife until his death, in 1836, recognizing her as his wife, and treating the daughter, Cynthia Elizabeth, as his child. After the death of Wilson, Cynthia Elizabeth married Abner W. Dyer, and the plaintiffs are the descendants of that marriage. Mrs. Dyer died July 13, 1869, and her husband died June 25, 1870. This ejectment was brought August 11,

1872.'' This case shows clearly that Missouri recognized common-law marriages.

Very much is said in the briefs regarding the appeal from the probate court to the district court. William Walker was a party in interest, and had a right to appeal, and, the matter in the probate court being appealed by one of the parties in interest, the whole matter was taken out of that court, and the district court had jurisdiction. The district court did not err in sustaining the appeal from the probate court. The judgment of the lower court is affirmed.

Rouse, J., concurs.

Bethune, J., having been of counsel for the petitioner in the probate court, took no part in this case in this court.

Baker, C. J., dissents.