[Civil No. 1970.  Filed May 2, 1922.]

[206 Pac. 405.]

MAYELLEN KIRBY, Appellant, v. JOE R. KIRBY, Appellee.

1. MARRIAGE—REGULATED BY STATE.—The domestic relation, including marriage and its dissolution, is peculiarly a matter of state regulation.

2. CONSTITUTIONAL LAW—PARTY NOT AFFECTED BY STATUTORY DISCRIMINATION NOT ENTITLED TO RAISE OBJECTION.—Where it was not shown that defendant was a descendant of the Caucasian race, she was not entitled to raise objection that under Civil Code of 1913, paragraph 3837, nullifying "all marriages of persons of Caucasian blood, and their descendants, with negroes, Mongolians or Indians, and their descendants," a person of mixed Caucasian blood cannot lawfully marry any person.

APPEAL from a judgment of the Superior Court of the County of Pima.  S. L. Pattee, Judge.  Affirmed.

Mr. R. W. Langworthy, for Appellant.

Mr. Paul J. Cella, for Appellee.

ROSS, C. J.—Joe R. Kirby, alleging that he is of Caucasian blood and that Mayellen Kirby is a negress, and that on or about May 27, 1914, in Pima county, Arizona, they were married, brought suit to have said marriage annulled.

Defendant demurred to the complaint as not stating facts sufficient to constitute a cause of action, in that the statute, paragraph 3837, Civil Code of 1913, declaring "all marriages of persons of Caucasian blood and their descendants, with negroes, Mongolians or Indians, and their descendants, shall be null and void," is unconstitutional because it conflicts with the federal Constitution: (1) In that it discriminates against descendants of persons of Caucasian blood in forbidding them to marry persons belonging to either of the other races or their descendants, while persons of mixed blood, other than Caucasian, may marry any person who is not Caucasian; (2) in that persons of mixed Caucasian blood cannot marry any person or lawfully contract any marriage in this state; and (3) the legislature is without power to prohibit persons of mixed Caucasian blood from contracting marriage in this state.

The defendant, answering the complaint, denied the plaintiff was a person of Caucasian blood and that she was a negress. The demurrer was overruled. The only issue in the case was as to whether the plaintiff was of Caucasian blood and the defendant of negro blood. The plaintiff introduced, to sustain the affirmative of the issue, his mother who testified that she was a Mexican with no admixture of Indian blood; that the plaintiff's father, Frank Kirby, was an Irishman, and that defendant is a negro. Plaintiff testified that he belonged to the white race and defendant belonged to the colored race. The defendant did not testify and did not introduce any testimony in support of her denial. The court entered a decree annulling the marriage, from which the defendant appeals.

The testimony shows that plaintiff and defendant were incompetent under the above statute to contract marriage, one being of the white race and the

other of the colored race, and, if the statute is one the legislature had the power to enact, the decision of annulment must be sustained. The domestic relation, including the marriage and its dissolution by divorce or proceedings to annul, as well as the regulation of it during its continuance, is peculiarly a matter of state regulation. This the courts have uniformly held where brought in question. *Maynard* v. *Hill,* 125 U. S. 190, 31 L. Ed. 654, 8 Sup. Ct. Rep. 723 (see, also, Rose's U. S. Notes); *Estate of Gregorson,* 160 Cal. 21, Ann. Cas. 1912D, 1124, L. R. A. 1916C, 697, 116 Pac. 60; *Norman* v. *Norman,* 121 Cal. 620, 66 Am. St. Rep. 74, 42 L. R. A. 343, 54 Pac. 143.

"In many jurisdictions intermarriage of the white and black races or of the white and Indian or Mongolian race has been prohibited by statute, and such statutes generally declare illegal and absolutely void marriages of white persons with negroes of the whole or part blood, Mongolians or Indians." 18 R. C. L. 444, § 73.

Our investigation of the cases involving a construction or application of such statutes has not brought to light any decision declaring them unconstitutional, and we have found but one case in which the validity of such a statute was questioned on that account. In that case the court asked this question:

"Does the law of the state, which prohibits and makes void a marriage between individuals of the Caucasian and of the African races, deprive the parties in this case of their rights guaranteed to them by the Constitution and laws of the United States. . . ."

This question was answered in the negative. *State of Georgia* v. *Tutty* (C. C.), 41 Fed. 753, 7 L. R. A. 50.

The defendant's objections to the validity of the law, to wit, that under it persons of mixed Cauca-

sian blood cannot marry any person or lawfully contract any marriage in the state, if true, is an attack thereon which she is not entitled to make for the reason that there is no evidence that she is other than of the black race. In other words, it is not shown that defendant is a descendant of the Caucasian race. It will be time enough to pass on the question she raises by her demurrer when it is presented by someone whose rights are involved or affected. As was said by this court in *Gherna* v. *State,* 16 Ariz. 344, Ann. Cas. 1916D, 94, 146 Pac. 494.

"We believe it to be the unquestioned rule that a person cannot raise a constitutional objection to a part of a statute which is not applicable to his own particular case. The authorities are overwhelmingly to this effect."

The judgment is affirmed.

McALISTER and FLANIGAN, JJ., concur.