## No. 15,080.

### JACKSON ET AL. *v.* CITY AND COUNTY OF DENVER.

(124 P. [2d] 240)

Decided March 9, 1942.   Rehearing denied March 30, 1942.

Mr. GEORGE G. ROSS, Mr. SAMUEL D. MENIN, for plaintiffs in error.

Mr. MALCOLM LINDSEY, Mr. WAYNE D. WILLIAMS, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFFS in error were defendants below and are hereinafter so referred to, or by name. Defendant in error is referred to as the city.

Defendants were convicted of vagrancy. They appealed to the county court where they were again convicted and fined $150 each. To review that judgment they prosecute this writ and ask that it be made a supersedeas. There are eleven specifications of points which in fact constitute but two assignments: (1) The evidence is insufficient. (2) Section 2, chapter 107, volume 4, '35 C.S.A., upon which the city relies, is unconstitutional.

So much of the city ordinance as is here material reads: "A vagrant within the meaning and provisions of this article shall be deemed to be: * * * 6. Any person who shall lead an * * * immoral * * * course of life." 1927 Municipal Code of Denver, §§ 1345, 1346.

So much of said statute as is here material reads: "All marriages between negroes or mulattoes, of either sex, and white persons, are also declared to be absolutely void. * * *; Provided that nothing in this section shall be so construed as to prevent the people living in that portion of the state acquired from Mexico from marrying according to the custom of that country." This statute has been in force from territorial days. L. Colo. Ter. 1864, p. 108, §2.

■ (1) This assignment is fully answered by a statement of undisputed facts disclosed by the record. March 20, 1941, the defendants, a colored man and a white woman, were arrested while living together as though married, hence the charge. In February, 1939, both being then married (not to each other) and while so living together, they were arrested, tried, and convicted of vagrancy. On their release they resumed that relationship and continued it to the time of their arrest in the instant case. Their defense on the facts is that in November, 1939, they entered into a common-law marriage, having meanwhile been divorced from their former mates. The man testified "I asked her if she would be my wife, she said 'Yes.' She asked me if I would be her husband, I said 'Yes'." Just like that. Nothing more. The unqualified testimony of the man was that he belonged to the "negro race," and the unqualified testimony of the woman was that she belonged to the "white race." If such a marriage could be so contracted it is clear that the essential element of good faith was absent. If there was no marriage the woman's name was Brethaner. When first arrested she gave it as Hafner.

Counsel strenuously contend that the facts do not bring the case within the common-law definition of vagrancy. We are not here concerned with that definition since the ordinance in question specifically defines the meaning of "vagrant," as therein used, and that ordinance and that definition would be good had vagrancy been unknown to the common law. While the statute stands, such conduct by such people in the city of Denver constitutes gross immorality and a clear violation of the ordinance.

■ (2) It is contended that said statute is unconstitutional because: (a) It discriminates against negroes and denies defendants the equal protection of the law; (b) it is ambiguous and incapable of interpretation; (c) by the proviso, or exception, it is limited in its operation to but a portion of the commonwealth.

It has generally been held that such acts are impregnable to the attack here made. 38 C.J., p. 1291, sec. 28; *Pace v. Alabama,* 106 U.S. 583, 1 Sup. Ct. 637, 27 L. Ed. 207; *State v. Gibson,* 36 Ind. 389, 10 Am. Rep. 42; *In Re Walker's Estate,* 5 Ariz. 70, 46 Pac. 67; *State v. Tutty,* 41 Fed. 753.

(a) There is here no question of race discrimination. The statute applies to both white and black. Had the woman only been prosecuted she would, and should, have been convicted. Since, under the facts, defendants could not, either ceremonially or by common law, be married, they were, if living together, leading "an immoral course of life." If not, a white man and white woman could do likewise with impunity and that other statute making it a criminal offense to live in an open and notorious state of adultery is void.

(b) The alleged ambiguity is said to arise from the fact that it is sometimes impossible to determine who are negroes, mulattoes, and whites. If that objection were ever good it would only be in case some difficulty was presented as to its interpretation. No such issue confronts us here since defendants admitted they were within its terms and a constitutional question can only be raised by one whose rights are infringed by the invalidity complained of. This rule is universal and is supported by countless decisions. We have so held some twenty-five times. Hence citation would seem superfluous and we give but one. There we said the proposition was "elementary." *Post Printing Co. v. Denver,* 68 Colo. 50, 54, 189 Pac. 39.

(c) As to the limitation of the proviso there are several complete answers to this defense. The marriage customs of that portion of the state acquired from Mexico have never been defined by statute or decision. Custom is a question of proof. Who so claims the benefit of this proviso must bring himself within it by his evidence. There is none in this record. For aught we know no custom of that territory contravenes the statute

and, evidence to the contrary being absent, that presumption must stand. Again, there is no evidence that the city of Denver, wherein the alleged common-law marriage was contracted and consummated, lies within the excepted territory, and we take judicial knowledge of the fact that it does not. Moreover, such provisions and exceptions rest in the discretion of the legislature and are generally upheld. *Missouri ex rel. Bowman v. Lewis,* 101 U.S. 22, 25 L. Ed. 989; *Maitland v. People,* 93 Colo. 59, 23 P. (2d) 116. Were it otherwise and the proviso invalid, the remainder of the act, under a universally accepted rule of interpretation, stands, and defendants are not benefited. 11 Am. Jur., p. 834, §152; *People v. Max,* 70 Colo. 100, 198 Pac. 150.

The judgment is affirmed.

MR. JUSTICE BOCK and MR. JUSTICE HILLIARD dissent.

MR. JUSTICE BOCK dissenting.

I regret my inability to concur. Defendants herein, Mr. and Mrs. James W. Jackson, were charged separately in a complaint with vagrancy in violation of section 1345, 1927 Municipal Code, Denver. The evidence disclosed that the sole basis for the vagrancy charge was a common-law marriage entered into in Denver and existing over a period of about eighteen months, between a negro male and a white female, asserted to be prohibited by section 2, chapter 107, '35 C.S.A., quoted in the majority opinion. The portion of the ordinance claimed to be applicable to the charge is as follows: "Section 1345. A vagrant within the meaning and provisions of this article shall be deemed to be: * * *
"6. Any person who shall lead an idle, immoral or profligate course of life; * * *."

Specifically, it is asserted that because defendants were living together as husband and wife, contrary to

section 2, chapter 107, supra, they were leading an "immoral" course of life. "At common law a vagrant is defined to be a wandering, idle person; a strolling or sturdy beggar; a person who refuses to work, or goes about begging, and not merely a person who goes about from place to place in the neighborhood without any visible means of support." 66 C.J., p. 399, §1. Defendants do not come within such a definition. Here the vagrancy ordinance includes immorality. The charge involves a course of life and not punishment for the doing of specific acts. "These statutes should be construed strictly and executed carefully, in favor of the liberty of the citizen." Section 2, Ibid. Does the common-law marriage here involved, and presumed to be bona fide, amount to a course of life which is immoral within the meaning of section 1345, supra? I think not. The only basis for such a claim is section 2, chapter 107, supra. This section does not expressly prohibit such a marriage; moreover, the proviso in said section makes it possible in "that portion of the state acquired from Mexico" to legally contract such a marriage. The record does not disclose what the marriage customs in that portion of the state are, but it may be assumed that they relate to the racial classifications stated in said section, otherwise the proviso would be useless. It seems, therefore, that we have a geographical immorality within the state, applicable to Denver but not to some other portions of Colorado.

The statutes of this state also provide (section 4, chapter 107, '35 C.S.A.) that: "All marriages contracted without this state, which shall be valid by the laws of the country in which the same were contracted, shall be valid in all courts within this state; provided, nothing in this section shall be construed so as to allow bigamy or polygamy in this state." In a substantial number of states and countries marriages such as the one we have before us are legal. When such a marriage is entered into in a state or country where it is valid, such rela-

tionship could not be considered immoral when the parties thereto remove to any place within this state, and would not constitute a violation of the vagrancy laws. In other words, to violate the vagrancy law, the immorality which it reaches must be of a general nature, applicable to all persons alike, otherwise there also would seem to be a discrimination against both negro and white persons in favor of the Mongolian race, members of which may enter into marriage relationships without any limitation whatsoever.

Such a construction is required of this penal ordinance as would protect the liberties of the individual. In the instant case, although the arresting officers had previous knowledge of this marriage, they waited until the hour of 11 o'clock p.m., March 20, 1941, to invade the home of the Jacksons, without a warrant, and placed them in jail for a period of two days, for investigation, before a bond could be given. This may be designated as vindictive, rather than a careful execution of the vagrancy laws. No authority is cited that such a marriage as is here involved, under a miscegenetic statute, ever has been held to constitute immorality under the vagrancy law, and in my opinion none can be found. Reference in the majority opinion to a former conviction of defendants, about eighteen months prior to the trial in the instant case, is purely gratuitous and absolutely immaterial to the issues.

Counsel for the Jacksons challenge the constitutionality of section 2, chapter 107, supra, on grounds which, in my opinion, are of a serious nature; but since it is my conclusion that the evidence did not sustain the offense of vagrancy, I deem it unnecessary to discuss constitutional questions.

The judgment should be reversed and the case remanded, with directions to dismiss the complaint and discharge the defendants.

MR. JUSTICE HILLIARD concurs in this dissent.