STEVENS v. UNITED STATES.

No. 2941.

Circuit Court of Appeals, Tenth Circuit.

Dec. 18, 1944.

122

A. L. Emery, of Okmulgee, Okl., for appellant.

John C. Harrington, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Cleon A. Summers, U. S. Atty., of Muskogee, Okl., and Norman MacDonald, of Washington, D. C., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

This case presents for determination rival claims to the estate of Stella Sands, deceased. The decedent, enrolled as a full-blood Creek Indian, executed in due form a will and later died, leaving an estate which included certain land previously allotted to her. The instrument was presented to the County Court of Okmulgee County, Oklahoma, for probate. William Stevens, enrolled as a Creek Freedman, filed objections to the probate of the will, pleading that subsequent to its execution he and the testatrix were married, that the marriage revoked the will, and that under the law of the state relating to descent and distribution he was entitled to share in the estate. Pursuant to section 3 of the Act of April 12, 1926, 44 Stat. 239, notice of the pendency of the proceeding was served on the Superintendent of the Five Civilized Tribes; the United States caused the proceeding to be removed to the United States Court for Eastern Oklahoma; and thereafter the United States intervened.

The court found that Stella Sands was a full-blood Creek Indian, and was not of African descent; that William Stevens was of African descent; that prior to November 17, 1936, they were living together and were residents of Oklahoma; that on such date they went to Independence, Kansas, procured a marriage license, entered into a ceremonial marriage, immediately returned to Oklahoma, and continued living together there until the death of Stella Sands. The court concluded that the marriage was invalid and void under the law of Oklahoma; that the will of a single person is revoked by a subsequent valid marriage, but not by a void marriage; and that since the marriage referred to was void, the protestant was not entitled to share in the estate of the decedent. The will was admitted to probate, and the protestant appealed.

By Article XIV of the treaty of March 24, 1832, 7 Stat. 366, 368, it was provided in substance that the Creek Indians should be allowed to govern themselves, subject to the general jurisdiction of Congress. By section 31 of the Act of May 2, 1890, 26 Stat. 81, 94, it was provided that the marriage laws of Arkansas should be effective in the Indian Territory; and by section 38 it was provided among other things that a certain section of the laws of Arkansas should not be construed so as to interfere with the operation of the laws governing marriage enacted by any of the civilized tribes; but by the Act of June 7, 1897, 30 Stat. 62, 83, it was provided that the laws of Arkansas in force in the Indian Territory should apply to all persons irrespective of race. By section 26 of the Act of June 28, 1898, 30 Stat. 495, 504, it was provided that thereafter the laws of the various tribes or nations of Indians should not be enforced at law or in equity by the courts of the United States in the Indian Territory. By section 2 of the Act of April 28, 1904, 33 Stat. 573, it was provided that all laws of Arkansas theretofore in effect in the Indian Territory should be continued and extended in their operation so as to embrace all persons and estates in the Territory, Indian or otherwise. By section 13 of the Act of June 16, 1906, 34 Stat. 267, 275, to enable the people of Oklahoma and of the Indian Territory to form a constitution and state government and be admitted into the Union, it was provided that the laws in force in the Territory of Oklahoma, as far as applicable, should extend over and apply to the state until changed by the legislature thereof. And by section 21 of the Enabling Act, it was provided that all laws in force in the Territory of Oklahoma at the time of the admission of the state should be in force throughout the state, except as modified or changed by the Act or by the constitution of the state, and the laws of the United States not locally inapplicable. It thus is clear that the marriage relations of Creek Indians in Oklahoma are subject to the laws of the state.

The decedent was an unmarried woman at the time she executed the will. The marriage ceremony into which she and appellant entered took place long after the will was executed, and it is provided by

Title 84, section 108, Okl.St.1941, that a will executed by an unmarried woman is revoked by a subsequent marriage. If that statute stood alone in pertinent application, the will was revoked by the marriage and appellant would be entitled to share in the estate. But Article XXIII, section 11, of the Constitution of Oklahoma, provides that wherever in the constitution and laws of the state the word or words "colored" or "colored race," "negro" or "negro race," are used, it or they shall be construed to mean and apply to all persons of African descent, and that the term "white race" shall include all other persons; section 12, Title 43, Okl.St.1941, forbids the marriage of any person of African descent, as defined in the constitution of the state, to any person not of such descent, or the marriage of any person not of African descent to a person of such descent; and section 13 provides that a marriage in violation of the preceding section shall be deemed a felony and punished as therein specified. The marriage of a Creek Indian of the full-blood and a person of African descent comes within section 12, supra. And the statute provides in effect that such a marriage is a nullity. Blake v. Sessions, 94 Okl. 59, 220 P. 876; Eggers v. Olson, 104 Okl. 297, 231 P. 483; Scott v. Epperson, 141 Okl. 41, 284 P. 19; Baker v. Carter, 180 Okl. 71, 68 P.2d 85; Long v. Brown, 186 Okl. 407, 98 P.2d 28.

■ The marriage ceremony between these persons took place in Kansas. But in respect of the acquisition of property in Oklahoma by descent and distribution, persons domiciled in that state, and subject to a valid inhibition against entering into a marriage contract there, cannot elude the law of the state by going into another state and being married there, and then immediately returning to Oklahoma to live and maintain the marriage assumed abroad. Eggers v. Olson, supra.

■ Section 12, supra, making unlawful marriages between persons of African descent and persons of other races or descents is challenged on the ground that it violates the Fourteenth Amendment. Marriage is a consentient covenant. It is a contract in the sense that it is entered into by agreement of the parties. But it is more than a civil contract between them, subject to their will and pleasure in respect of effects, continuance, or dissolution. It is a domestic relation having to do with the morals and civilization of a people. It is

an essential institution in every well organized society. It affects in a vital manner public welfare, and its control and regulation is a matter of domestic concern within each state. A state has power to prescribe by law the age at which persons may enter into marriage, the procedure essential to constitute a valid marriage, the duties and obligations which it creates, and its effects upon the property rights of both parties. Maynard v. Hill, 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654. And within the range of permissible adoption of policies deemed to be promotive of the welfare of society as well as the individual members thereof, a state is empowered to forbid marriages between persons of African descent and persons of other races or descents. Such a statute does not contravene the Fourteenth Amendment. Ex parte Francois, 9 Fed.Cas. page 699, No. 5,047; In re Hobbs, 12 Fed.Cas. page 262, No. 6,550; Ex parte Kinney, 14 Fed.Cas. page 602, No. 7,825; State v. Tutty, 41 F. 753, 7 L.R.A. 50; State v. Gibson, 36 Ind. 389, 10 Am.Rep. 42; State v. Kennedy, 76 N.C. 251, 22 Am.Rep. 683; Green v. State, 58 Ala. 190, 29 Am.Rep. 739; Frasher v. State, 3 Tex.App. 263, 30 Am.Rep. 131; Dodson v. State, 61 Ark. 57, 31 S.W. 977; Kirby v. Kirby, 24 Ariz. 9, 206 P. 405; In re Shun T. Takahashi's Estate, 113 Mont. 490, 129 P.2d 217.

■ Section 12, supra, is attacked on the further ground that it impinges upon section 1 of the Civil Rights Bill, R.S. § 1977, 8 U.S.C.A. § 41. The statute does not merely forbid a person of African descent to intermarry with a person of other race or descent. It equally forbids a person of other race or descent to intermarry with a person of African descent. And the succeeding section prescribes the same punishment for both offenders. There is no discrimination against the colored race, within the purview of the Civil Rights Bill. Pace v. State of Alabama, 106 U.S. 583, 1 S.Ct. 637, 27 L.Ed. 207.

■ The court admitted in evidence the pertinent parts of the tribal rolls of the Creek Nation showing that Stella Sands was enrolled as a Creek Indian of the full-blood, and that appellant was enrolled as a Creek Freedman. It is contended that the rolls were not conclusive evidence of Indian blood and that they were hearsay. The Dawes Commission was a special tribunal created by act of Congress and vested with certain judicial powers. Ab-

sent fraud, gross mistake, or arbitrary action, its judgments are conclusive in respect to the ultimate questions it was authorized to determine, and as to every question of law or fact necessary to resolve in order to determine the ultimate questions. The conclusive effect of the findings of the Commission is limited to ultimate questions which it was authorized to determine, such as the persons to be enrolled. Statements and recitals in the records of the Commission relating to matters which were incidental and collateral to the ultimate question for determination are not conclusive, but they are admissible in evidence and are entitled to appropriate consideration along with all the other evidence where the question to which they relate is in issue. Norton v. Larney, 266 U.S. 511, 45 S.Ct. 145, 69 L.Ed. 413; United States v. Mid-Continent Petroleum Corporation, 10 Cir., 67 F.2d 37, certiorari denied, 290 U.S. 702, 54 S.Ct. 346, 78 L.Ed. 603; Scott v. Beams, 10 Cir., 122 F.2d 777, certiorari denied, 315 U.S. 809, 62 S.Ct. 794, 86 L.Ed. 1208. The records were clearly admissible, and it is unnecessary to determine whether they were conclusive, prima facie, or otherwise, as additional and independent evidence was introduced relating to the blood of the deceased and of appellant.

It is further contended that the deceased was and the appellant is of mixed blood, part Indian and part Freedman. The effect of this contention is to challenge for want of substantial evidence the finding of the court that the deceased was a full-blood Creek Indian and that appellant is of African descent. It would not serve any useful purpose to review the evidence at length. It is sufficient to say that a painstaking examination of the record convinces us that the findings are supported by substantial evidence and are not clearly erroneous, due regard being had for the opportunity of the trial court to observe the witnesses, appraise their credibility, and to determine the weight to be given to their testimony. Therefore the findings are not to be overturned on appeal. Prudential Insurance Co. v. Carlson, 10 Cir., 126 F.2d 607; Newell v. Phillips Petroleum Co., 10 Cir., 144 F.2d 338; Davies v. Lahann, 10 Cir., 145 F.2d 656.

The remaining contention which merits attention is that the United States should not be permitted to benefit to the detriment of appellant by the breach of an agreement of counsel. A few days before the cause came on for trial, appellant filed an application for continuance in which it was recited that by oral statement and by letter assurance had been given to the attorney for appellant that the probate attorney would file a motion for judgment on the pleadings and that then the proceeding would be presented to the court only on the issues of law; that relying upon the assurance the attorney for appellant made no preparation for the trial; that at the last minute counsel for the United States reached a contrary conclusion and determined not to file the motion; and that except for the agreement, counsel for the appellant would have been ready to introduce his proof tending to show that Stella Sands was of mixed blood. But appellant only asked for a continuance. Nothing else was sought or even suggested. And while the case was partially heard at the time it was set for trial, a continuance was granted and about six months later the hearing was resumed and completed, without objection or exception on the part of appellant. Manifestly he is not in position now to urge that the United States benefited and he suffered detriment as the result of a breach of agreement between counsel.

Affirmed.